**MIKOHN GAMING CORPORATION,**
Plaintiff–Appellee,

v.

**ACRES GAMING, INC., Defendant–Appellant.**

Nos. 98–1216, 98–1217.

United States Court of Appeals,
Federal Circuit.

Dec. 30, 1998.

---

* L. Ray Patterson, *Lawyer's Law: Procedural Malpractice and Disciplinary Issues* (Matthew Bender 1998).

Steven E. Shapiro, Mitchell, Silberberg & Knupp LLP, of Los Angeles, California, argued for plaintiff-appellee. With him on the brief was D. James Chung. Of counsel on the brief were Steve Morris and Adam P. Segal, Schreck Morris, of Las Vegas, Nevada.

Jerry A. Riedinger, Perkins Coie LLP, of Seattle, Washington, argued for defendant-appellant. Of counsel on the brief were Alan T. McCollom, and Stephen S. Ford, Marger, Johnson, McCollom & Stolowitz, of Portland, Oregon.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Acres Gaming, Inc. appeals the grant of a preliminary injunction by the United States District Court for the District of Nevada,[1] prohibiting Acres from stating to customers and prospective customers of Mikohn Gaming Corporation and through the public press that Mikohn's MoneyTime System appears to infringe Acres '961 patent and pending patent applications. Since the criteria were not met for enjoining the giving of such notice, the injunction is vacated.

## BACKGROUND

Both Acres and Mikohn are in the business of manufacturing and selling gaming devices such as slot machines. Acres owns United States Patent No. 5,655,961 entitled "Method for Operating Networked Gaming Devices," and several related patent applications. Acres sells a gaming system called the "Hurricane Zone," which incorporates the inventions of the '961 patent and pending applications. Mikohn sells a competing gaming system called the "MoneyTime" system. The following excerpt from a letter to the Horseshoe Casino in Robinsonville, Mississippi is representative of notices that Acres sent to several of Mikohn's customers and potential customers upon issuance of the '961 patent. Acres stated:

It appears that the MoneyTime system manufactured and sold by Mikohn Corp. infringes at least some of the claims of the

---

1. *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* No. CV–S–97–1383–HDM (LRL) (D.Nev. Jan. 13, 1998).

enclosed patent, although this cannot be determined conclusively without a better understanding of the structure and operation of the MoneyTime system.

There are a number of pending U.S. applications owned by Acres Gaming which have the same disclosure as the '961 patent. . . .

You should be aware that when these patents issue, Acres Gaming intends to use its patents to stop use of such systems.

Acres also issued a press release announcing the grant of the '961 patent and stating, "Mikohn is clearly suffering in the marketplace as a result of the issuance of our patent. Customers naturally hesitate to do business with a company whose products appear to infringe a patent. . . ." The record does not show the extent of any publication of the release.

Mikohn responded by bringing suit in federal district court in Nevada, requesting a declaration that the MoneyTime System did not infringe the '961 patent. Mikohn also charged Acres with intentional interference with existing and potential business relationships, in violation of Nevada common law. The district court granted Mikohn's request that Acres be enjoined, *pendente lite,* from further statements to Mikohn's customers or potential customers "either orally or in writing, directly or indirectly, that Mikohn's MoneyTime System infringes on Acres '961 patent or other pending patent application submitted by Acres to the United States Patent Office."

This appeal followed.

## DISCUSSION

Federal jurisdiction was based on the declaratory action filed by Mikohn on the issue of patent infringement. *See* 28 U.S.C. § 1338(a) ("arising under" jurisdiction in patent cases)[2] and 28 U.S.C. § 2201(a) (declaratory judgment action). 28 U.S.C. § 1367 provides for pendent or supplemental juris-

diction in the federal courts for claims that "form part of the same case or controversy," thus establishing jurisdiction in the district court of the common law tort of interference with business relationships. The issue for which injunction was sought was based on this common law cause of action. However, as we shall discuss, a notice of patent rights that is protected under federal law can not be held violative of state law on a different legal standard. The propriety of the preliminary injunction depends in part on the propriety of the action enjoined, which in turn depends on whether federal patent law or state tort law applies to the notice that Acres gave to its and Mikohn's customers and potential customers and released to the press.

## A

The Federal Circuit has generally viewed the grant of a preliminary injunction as a matter of procedural law not unique to the exclusive jurisdiction of the Federal Circuit, and on appellate review has applied the procedural law of the regional circuit in which the case was brought. *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1188 n. 2, 37 USPQ2d 1685, 1686 n. 2 (Fed. Cir.1996) ("On procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit, the law of the regional circuit shall be applied.") (citing *Lummus Indus. v. D.M. & E. Corp.,* 862 F.2d 267, 8 USPQ2d 1983 (Fed.Cir.1988)).

While we recognize that the general considerations underlying the grant or denial of a preliminary injunction do not vary significantly among the circuits, we benefit from the wealth of Ninth Circuit precedent. We also take note that the Federal Circuit has itself built a body of precedent applying these general considerations to a large number of factually variant patent cases, and we give dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues.[3]

---

**2.** 28 U.S.C. § 1338(a) provides:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the

courts of the states in patent, plant variety protection and copyright cases.

**3.** In *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451 n. 12, 7 USPQ2d 1191, 1195 n. 12 (Fed.Cir.1988), we said:

■ The Ninth Circuit has stated the general criteria for grant of a preliminary injunction as follows: "The moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Dollar Rent A Car v. Travelers Indemnity Co.*, 774 F.2d 1371, 1374–75 (9th Cir.1985). These are not two distinct tests, but the poles of a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987). The Ninth Circuit defines "serious questions" in this context as "questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir.1988). However, the "serious questions" must carry at least a "fair chance of success on the merits" in order to warrant interim relief. *National Wildlife Federation v. Coston*, 773 F.2d 1513, 1517 (9th Cir.1985).

The oft-stated rule is that the grant of a preliminary injunction shall be sustained on appeal unless "the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of facts." *FDIC v. Garner*, 125 F.3d 1272, 1276 (9th Cir.1997). *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1449, 7 USPQ2d 1191, 1194 (Fed.Cir.1988) (appellate review is "limited to determining whether, in granting the preliminary injunction, the district court abused its discretion, committed an error of law, or seriously misjudged the evidence.")

■ Abuse of discretion is a flexible term whose application can vary broadly. Thus the discretion of the district courts in issuing preliminary injunctions is reviewed with attention to the legal standards applied as well as the equitable considerations underlying the grant of preliminary relief. "Where the district court is alleged to have relied on erroneous legal premises, review is plenary," *Does 1–5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir.1996), as is review of "the correctness of the legal standards employed by the district court in evaluating the plaintiff's likelihood of success on the merits," *Associated General Contractors v. Coalition for Economic Equity*, 950 F.2d 1401, 1405 (9th Cir.1991). However, the district court's estimates of the balance of harms and the irreparability of injury, and any policy considerations, raise less tangible aspects whose equitable components may warrant more deferential review.

■ Taken together, in granting a remedy or a restraint before a matter is litigated, "[t]he exercise of a power so far-reaching ought to be subject to effective, and not merely perfunctory, appellate review." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 389 (7th Cir.1984). When judicial discretion is exercised to restrain commercial communications, it is subject to special scrutiny.

### B

The district court held that Mikohn's charge of intentional interference with present and prospective business relationships warranted preliminary injunctive relief. The court explained that "while the following statement in the letter 'it appears that the MoneyTime slot machine infringes' Acres' patent, may not be a statement of fact, all of the statements taken as a whole, including the statements made in the newspaper, the

We note that confusion exists on the issue whether, in view of *Panduit [Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984)], Federal Circuit law or regional circuit law provides the standards governing the issuance of an injunction pursuant to § 283. Because the issuance of an injunction pursuant to this section enjoins "the violation of any right secured by a

patent, on such terms as the court deems reasonable," a preliminary injunction of this type, although a procedural matter, involves substantive matters unique to patent law and, therefore, is governed by the law of this court. We recognize, however, that purely procedural questions involving the grant of a preliminary injunction are controlled by the law of the appropriate regional circuit.

Court concludes could be construed as stating that Mikohn's product does indeed infringe Acres patents, and the jury, the trier of fact, could find that the statement was made and that it was untrue."

Mikohn argued, and the district court apparently agreed, that Acres' statements concerning its patent rights and intentions to enforce them were intended to achieve competitive advantage in an improper way, and grounded the grant of preliminary relief on the count of intentional interference with Mikohn's business relationships. The district court did not discuss the truth or falsity of the statements in Acres' letters or the press release, or the likelihood of Acres' success on a patent infringement claim, other than to conclude that the statements could be understood by the recipient as meaning that Mikohn's system indeed infringes Acres' patent rights. The court's explanation that a jury could find that Acres' patent rights were not infringed was not an evaluation of the merits of possible infringement, or of the likelihood of such a finding by the jury; it was simply a statement of the vagaries of litigation.

■ As set forth in *Leavitt v. Leisure Sports Incorporation*, 103 Nev. 81, 734 P.2d 1221 (1987), the tort of intentional interference with prospective business relations contains five elements. In order to prevail, Mikohn as plaintiff would have to establish 1) a prospective commercial relationship between the plaintiff and a third party, 2) the defendant's knowledge of this relationship, 3) the defendant's intent to harm the plaintiff by preventing the relationship, 4) the absence of privilege or justification for the defendant, and 5) actual harm to the plaintiff as a result of the defendant's conduct. *Id.* at 88 (citing *Buckaloo v. Johnson*, 14 Cal.3d 815, 122 Cal.Rptr. 745, 537 P.2d 865 (1975)). Similarly, the tort of intentional interference with existing (as contrasted with prospective) business relations requires (1) the existence of a business relationship under which the plaintiff has some legal rights, (2) the defendant's knowledge of the relationship, (3) the defendant's intentional interference with that relationship in a manner that is not legally justified or excused, and (4) damage to the plaintiff. *Feminist Women's Health Ctr.,*

*Inc. v. Mohammad,* 586 F.2d 530, 551 (5th Cir.1978) (cited with approval in *Collins v. Union Federal Savings & Loan Ass'n,* 99 Nev. 284, 301, 662 P.2d 610 (1983)).

■ The torts of interference with actual or prospective business relationships require that the purportedly interfering communications or other conduct not be legally justified. However, whether Acres' communications were legally justified raises considerations of federal law governing the giving of notice of patent rights. To the extent that conflict arises in the interaction between state commercial law and federal patent law, federal law must be applied.

■ The only basis for this action of tortious interference with business relationships was Acres' giving of notice of its patent rights and the intent to enforce them. The propriety of that notice depends on patent law and the patent issues to which the notice pertains. National uniformity, in confluence with the national scope of the patent grant and the general federal exclusivity in patent causes, require that determination of the propriety of Acres' actions in giving notice of its patent rights is governed by federal statute and precedent and is not a matter of state tort law. Thus in *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1336, 47 USPQ2d 1769, 1782 (Fed.Cir.1998) the court observed that "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith." In *Abbott Laboratories v. Brennan,* 952 F.2d 1346, 1355–57, 21 USPQ2d 1192, 1199–1201 (Fed.Cir.1991) the court held that the allegation of inequitable conduct in obtaining a patent is not remediable by state action for abuse of process. This court affirmed the inappropriateness of "providing another forum for collateral attack, under the common law, on proceedings for which federal process has been provided."

### C

Acres states that its letters and press release concerning its patent rights were accurate factual statements and proper notice under the patent law, and thus can not be

enjoined under state law. Acres states that bad faith, a necessary element of improper notice under federal patent law, was not shown and can not be inferred on these facts. Mikohn disputes Acres' motive, stating that at best the giving of notice was premature, pointing to Acres' statement in the letters and press release that infringement had not been "determined conclusively" and the fact that Acres had not charged Mikohn with infringement when it sent these letters to potential customers.

Mikohn states that Acres' communications were written in order to intimidate prospective customers, and that Acres' purpose was to obtain an unfair business advantage by placing the Mikohn product under a cloud of potential litigation. Mikohn states that Acres had no intention of bringing suit, and argues that such behavior justifies injunctive relief, citing *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 710, 24 USPQ2d 1173, 1181 (Fed.Cir.1992) ("Infringement notices have been enjoined when the patentee acted in bad faith, for example by making threats without intending to file suit") and *Betmar Hats, Inc. v. Young America Hats, Inc.*, 116 F.2d 956, 957, 48 USPQ 266, 267 (2d Cir. 1941) ("[P]ersistent threats to the trade, unsupported by any attempt to have the patentee's claims established by suit, will not be permitted. Failure to assert their rights in the customary way indicated a lack of good faith on the part of the defendants.") (citations omitted). Acres responds that its letters were an accurate statement of its knowledge at that stage, and that it had not yet verified infringement because that would require discovery of the inner workings of the MoneyTime system.

 In general, Mikohn's position takes its support from state tort law, and Acres from federal patent law. Federal precedent is that communication to possible infringers concerning patent rights is not improper if the patent holder has a good faith belief in the accuracy of the communication. Although "bad faith" may encompass subjective as well as objective considerations, and the patent holder's notice is not irrelevant to a determination of bad faith, a competitive commercial purpose is not of itself improper,

and bad faith is not supported when the information is objectively accurate. In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights. Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights "even though he may misconceive what those rights are." *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314, 85 USPQ 285, 287 (2d Cir.1950). It has long been recognized that "Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action considered by itself cannot be said to be illegal." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37–38, 33 S.Ct. 202, 57 L.Ed. 393 (1913).

Thus federal authority makes clear that it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent. *Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681, 43 USPQ2d 1659, 1664 (Fed.Cir.1997). *See, e.g., Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709, 24 USPQ2d 1173, 1180 (Fed.Cir.1992) (a patentee "that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers"); *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539, 227 USPQ 784, 785 (Fed.Cir.1985) (patentee "did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit").

 A patentee has the right to inform a potential infringer of the existence of the patent, whereby the recipient of the information may adjust its activities, perhaps seek a license, or otherwise act to protect itself. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869, 45 USPQ2d 1225, 1232 (Fed. Cir.1997). The statute contemplates such notice. *See* 35 U.S.C. § 287 (Limitation on damages and other remedies; marking and notice). Federal law has uniformly upheld a patentee's right to publicize the issuance of patents and to so inform potential infringers.

### D

We apply federal patent law and precedent relating to the giving of notice of patent rights, in reviewing the grant of an injunction against the giving of such notice. As we have discussed, federal law requires a showing of bad faith in order to bar such communications. Communication of accurate information about patent rights, whether by direct notice to potential infringers or by publicity release, does not support a finding of bad faith. Indeed, judicially-mandated silence would preserve the ignorance of potential infringers, to the possible benefit of Mikohn but to the possible detriment of others whose liability could build.

The grant of the preliminary injunction, then, is reviewed in the context of whether, under applicable federal law, the notice of patent rights was properly given. The record provided shows no more than a negligible likelihood of success in showing bad faith in Acres' giving of notice by letters and publicity release. In addition, there was no strong showing of irreparable injury or that the balance of harms strongly favored Mikohn. *See Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (" 'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.' ") (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). As explained in *Maxim's, Ltd. v. Badonsky*, 772 F.2d 388, 391, 227 USPQ 316, 318 (7th Cir.1985) the judge "would be right to require a fairly clear-cut probability of success if he did not find that harm to the plaintiff outweighed harm to the defendant to a significant degree." The district court made no reference to the public interest, or to the interest of those to whom the letters were directed.

Although Mikohn states that Acres' purpose was not the giving of notice as a matter of objective information, but as a carefully crafted competitive tactic, this allegation, even if true, does not substitute for the obligation to satisfy the factors predicate to the grant of a preliminary injunction. On the factors before the district court, applying federal law, it exceeded the court's discretionary authority to enjoin Acres' dissemination of information concerning its patent rights. The preliminary injunction is vacated.

### Costs

Each party shall bear its costs.

*INJUNCTION VACATED.*