MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 90
Docket:      BCD-17-180
Argued:      November 14, 2017
Decided:     July 3, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Concurrence:ALEXANDER, J.

PURITAN MEDICAL PRODUCTS COMPANY LLC

v.

COPAN ITALIA S.P.A.

HUMPHREY, J.

[¶1]  Puritan Medical Products Company LLC appeals from a summary judgment entered in the Business and Consumer Docket (*Mulhern, J.*) in favor of Copan Italia S.p.A. on Puritan's claim that Copan violated Maine's Actions for Bad Faith Assertion of Patent Infringement statute, 14 M.R.S. §§ 8701-8702 (2017).  Although the court granted Copan's motion for summary judgment after finding no genuine issues of material fact and determining that Copan was entitled to judgment as a matter of law, Copan filed a cross-appeal to preserve its separate argument that Puritan's claim was preempted by federal patent law.  Because we conclude that Puritan's claim is

2

preempted, we affirm the grant of summary judgment in favor of Copan on other grounds.

## I. BACKGROUND

[¶2] Puritan and Copan both produce flocked swabs[1] that are sold throughout the world. Copan has developed, produced, and marketed flocked swabs since 2003 and currently holds patents in both Europe and the United States. Headquartered in Italy, Copan also maintains facilities in China and the United States and employs 450 people. In 2015, Copan produced over 50 million flocked swabs.

[¶3] Puritan also manufactures flocked swabs. Based in Guilford, Maine, Puritan employs 250 people. In 2010, Puritan applied for patents relating to flocked swabs and began producing, marketing, and selling its flocked swabs in countries where Copan holds patents.

[¶4] In 2011, Copan became concerned that some of Puritan's flocked swabs infringed its European and United States patents. Copan alleged that it

---

[1] A flocked swab is a device used for the collection of biological specimens. Contrary to the concurrence's characterization of these products as "glorified 'Q-tips,'" the flocked swabs manufactured by Copan and Puritan are used for the "collection of microbiological specimens for the transport and preservation to the laboratory for use in the medical, forensic, and nonclinical applications." *See* Concurring Opinion ¶ 30. Indeed, Copan's name stands for "COllection and Preservation for ANalysis." Q-tips®, or generic cotton swabs, on the other hand, are advertised as "perfect for arts & crafts, manicures, makeup application, cleaning and more!" *Q-TIPS® Cotton Swabs*, Q-tips, http://www.qtips.com/products/qtips-cotton-swabs/ (last visited June 28, 2018).

commissioned external and performed internal examinations of Puritan's flocked swabs to compare them to Copan's patents.[2] Based on the results of that testing, Copan sent a letter to Puritan's distributor on June 8, 2011, communicating its belief that Puritan's swabs infringed Copan's patents.

[¶5] In 2012, Copan filed a claim against Puritan in Germany, alleging infringement of its German utility models,[3] which evolve from its European patents. Through those proceedings, Copan received additional information about the composition of Puritan's flocked swabs from tests performed by two court-appointed experts. Copan interpreted the results of the tests to confirm that Puritan's flocked swabs fall within the scope of protection afforded by some of Copan's patents. Puritan denies that the experts' findings confirmed infringement. Although aspects of the German proceedings are still pending, Copan won a utility model infringement case against Puritan in 2014 and, in 2015, one of its European patents and a utility model were confirmed to be valid.

[¶6] In the spring of 2015, Copan learned that Puritan's flocked swabs may have been offered as part of a bid by a distributer, GE Healthcare Life

---

[2] The parties dispute the existence and the findings of those examinations.

[3] According to the record, a German utility model is an intellectual property right, similar to a patent in some respects, but lasting only ten years, whereas a patent's protection lasts twenty years.

4

Sciences, to supply the French Gendarmerie with forensic products. Copan sent letters to GE Healthcare[4] and the French Gendarmerie, explaining that Puritan's flocked swabs may infringe upon Copan's patents. The French Gendarmerie did not accept GE Healthcare's offer.

[¶7] In September 2015, Puritan filed a complaint in the Superior Court in Piscataquis County against Copan pursuant to Maine's Actions for Bad Faith Assertion of Patent Infringement statute. *See* 14 M.R.S. §§ 8701-8702. Shortly thereafter, the case was transferred to the Business and Consumer Docket. Copan answered the complaint and asserted affirmative defenses, including that Puritan's claim was preempted by United States federal patent law.[5] After more than one year of discovery, Copan moved for summary judgment, arguing that federal patent law preempted Puritan's claim and, in the alternative, that the record showed no genuine issue of material fact on the merits and that it was entitled to summary judgment as a matter of law.

[¶8] The court granted Copan's motion for summary judgment. It concluded (1) that it had jurisdiction to consider Puritan's claim because it

---

[4] Copan's letter to GE Healthcare is the "demand letter" in this case. *See* 14 M.R.S. § 8701(1)(A) (2017).

[5] Copan's original answer, filed in October 2015, did not include preemption as an affirmative defense. The court granted Copan leave to amend its answer in December 2016, and Copan's amended answer included an "affirmative defense" of preemption.

was not preempted by federal patent law, and (2) that there were no genuine issues of material fact and Copan was entitled to summary judgment.[6]

[¶9]  Puritan filed an appeal from the summary judgment, and Copan filed a cross-appeal, challenging the court's conclusion that Puritan's claim was not preempted by federal law.  M.R. App. P. 2 (Tower 2016).[7]

## II.  DISCUSSION

[¶10]  We review the entry of an order for summary judgment de novo for errors of law, viewing the evidence in the light most favorable to the party against whom summary judgment was entered.  *See Diviney v. Univ. of Me. Sys.*, 2017 ME 56, ¶ 14, 158 A.3d 5.

[¶11]  Before we can reach Puritan's challenge to the trial court's grant of summary judgment, we must first decide whether federal patent law preempts Puritan's state law claim.  *See James v. Inhabitants of the Town of West Bath*, 437 A.2d 863, 865 n.3 (Me. 1981) (explaining that a court will decide whether a law or ordinance is preempted before addressing the

---

[6]  The concurrence's assertion that this Court "elects to reach out [and] invoke the federal law of preemption," *see* Concurring Opinion ¶¶ 33, 35, 37, ignores the fact that the trial court also analyzed the preemption issue, and did so before reaching the merits of Puritan's state law claim, thus understanding that preemption is a threshold issue.  Preemption was an issue before the trial court, and it was raised as an issue on appeal.

[7]  These appeals were commenced before September 1, 2017, and therefore the restyled Maine Rules of Appellate Procedure do not apply.  *See* M.R. App. P. 1.

substantive argument).  "Federal preemption, which involves issues of statutory and constitutional interpretation, is a question of law reviewed de novo." *In re Guardianship of Smith*, 2011 ME 51, ¶ 10, 17 A.3d 136.  If we conclude that Puritan's state law claim is preempted, we will not address the parties' substantive arguments on the merits of Puritan's claim.  *See Doe v. Portland Hous. Auth.*, 656 A.2d 1200, 1202 (Me. 1995); *James*, 437 A.2d at 865 n.3.

[¶12]  We begin by clarifying the legal standard for federal patent law preemption and apply it to the facts presented in the parties' statements of material facts and the supporting evidentiary materials, with disputes resolved in Puritan's favor.  *See Scott v. Androscoggin Cty. Jail*, 2004 ME 143, ¶¶ 2, 15, 866 A.2d 88.

A.     Preemption and Federal Patent Law

[¶13]  The Supremacy Clause of the United States Constitution states that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  Federal preemption of state law takes three forms: express preemption, field preemption, and conflict preemption.  *See, e.g.*, *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).  Express preemption occurs when Congress defines "explicitly the

extent to which its enactments pre-empt state law." *Id.* at 78. Field preemption occurs when a state law attempts to "regulate[] conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79. Finally, conflict preemption occurs "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[8] *Id.* (quotation marks omitted).

[¶14] The United States Court of Appeals for the Federal Circuit, the federal court with jurisdiction over patent law appeals, has determined that federal patent law neither fully occupies the field nor expressly preempts state patent law. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005). Therefore, federal patent law preempts state law only when the state law directly conflicts with federal law. *See id.*

[¶15] At the heart of it, federal patent law protects a patent holder's good-faith assertion of patent infringement. *See Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *see also Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the

---

[8] Conflict preemption can also occur "where it is impossible for a private party to comply with both state and federal requirements." *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990); *see also Bourgoin v. Twin Rivers Paper Co.*, 2018 ME 77, ¶ 10, --- A.3d ---.

consequences of infringement or proceeded against in the courts."); *Aronson v. Orlov*, 116 N.E. 951, 955 (Mass. 1917) ("The owner of a patent already issued may notify infringers and warn of his intent to protect his rights, if he acts in good faith.").  A patent holder, "acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though [it] may misconceive what those rights are."  *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (quotation marks omitted).

[¶16]  Relevant to the conflict preemption analysis, it is fundamental to the federal patent law's protection accorded to patent holders that state law claims "against a patent holder . . . based on enforcing a patent in the marketplace[] are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent."  *See 800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008); *see also Globetrotter*, 362 F.3d at 1374 ("We have held that federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation."); *Mikohn Gaming*, 165 F.3d at 894 (stating that "a notice of patent rights that is protected under

federal law can not be held violative of state law on a different legal standard"). [9] In order for a state law claim "to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the [state law] claim." *Globetrotter*, 362 F.3d at 1374 (quotation marks omitted). In other words, "federal patent laws . . . bar state-law liability for communications concerning alleged infringement so long as those communications are not made in 'bad faith.'" *Id.* at 1374-75.

[¶17] Because "[b]ad faith includes separate objective and subjective components," *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008), determining whether a patent holder acted in bad faith involves a two-step inquiry. First, to survive a motion for summary judgment, the plaintiff must present evidence that the patent holder's allegations of patent infringement were "objectively baseless," meaning that

---

[9] Other state courts have acknowledged this conflict preemption in patent law. *See, e.g.*, *Xitronix Corp. v. KLA-Tencor Corp.*, No. O3-12-00206-CV, 2014 Tex. App. LEXIS 8592, at \*6 (Tex. App. Aug. 7, 2014) ("Federal patent law generally preempts state-law tort liability, including claims for tortious interference and unfair competition, essentially immunizing a patentee from liability when it in good faith publicizes allegations of infringement of its patent."); *Step Saver, Inc. v. Glacier Salt, Inc.*, A04-1805, 2005 Minn. App. LEXIS 656, at \*8 (Minn. Ct. App. June 14, 2005) (explaining that "if a plaintiff bases an action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with the federal patent law").

"no reasonable litigant could realistically expect success on the merits."[10] *See GP Indus. v. Eran Indus.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (quotation marks omitted). Second, in the context of summary judgment, if the plaintiff presents evidence that the patent holder's allegations were objectively baseless, it then must also present evidence that the patent holder acted in subjective bad faith. *See 800 Adept*, 539 F.3d at 1370.

[¶18] In sum, federal patent law protects good faith assertions of patent infringement, and there exists "a presumption that the assertion of a duly granted patent is made in good faith." *See Golan v. Pingel Enter.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) (quotation marks omitted). Any state law claim that conflicts with the federal law's protection of good faith assertions of patent infringement would be preempted. *See Globetrotter*, 362 F.3d at 1374. Only when a party alleging a state law claim demonstrates that the assertion of patent infringement was objectively baseless and made in subjective bad faith will the claim escape preemption and be able to be considered on the merits of the state law cause of action.

---

[10] The objectively baseless standard applies "outside the context of actual litigation" to "state-law claims based on communications alleging patent infringement." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1376-77 (Fed. Cir. 2004).

B.    Maine's Law

[¶19]   In 2014, Maine's Legislature enacted 14 M.R.S. §§ 8701-8702, entitled Actions for Bad Faith Assertion of Patent Infringement.  *See* P.L. 2013, ch. 543 (effective Aug. 1, 2014).  In doing so, Maine joined a growing number of states that have passed similar laws in an attempt to address the problems presented by patent trolls[11] and bad faith assertions of patent infringement. *See An Act Regarding Bad Faith Assertions of Patent Infringement: Hearing on L.D. 1660 Before the J. Standing Comm. on the Judiciary*, 126th Legis. (2014) (testimony of John D. Delahanty, Esq.); Paul R. Gugliuzza, *Patent Trolls and Preemption*, 101 Va. L. Rev. 1579, 1593 (2015).

[¶20]   The Maine statute prohibits a person from making "a bad faith assertion of patent infringement against another person."    14 M.R.S. § 8701(2).  The statute does not define the phrase "bad faith assertion" but lists factors a court may consider to determine whether a defendant has made a bad faith assertion, including certain deficiencies in the demand letter; a demand for payment of a fee within an unreasonably short period of time; actual or constructive knowledge by the patent holder that the assertion of

---

[11] Patent trolls are companies, typically that do not produce any product or provide any service, that purchase patents for the sole purpose of suing other companies for patent infringement. *See An Act Regarding Bad Faith Assertions of Patent Infringement: Hearing on L.D. 1660 Before the J. Standing Comm. on the Judiciary*, 126th Legis. (2014) (testimony of Sen. Anne Haskell).

patent infringement was meritless; and the deceptive nature of the assertion. 14 M.R.S. § 8701(3)(A). The statute also lists factors that a court may consider as evidence that a defendant did *not* make a bad faith assertion: the demand letter was not deficient; the defendant made a good faith effort to establish that the plaintiff infringed the patent; the defendant made a substantial investment in the use of the patent or in the production or sale of a product or item covered by the patent; and the defendant demonstrated good faith business practices in previous efforts to enforce the patent or a substantially similar patent. 14 M.R.S. § 8701(3)(B).

[¶21] With this understanding of the state law, our task is to determine whether its application in this case is in conflict with federal patent law.

C.      Federal Preemption of Claims Alleged Pursuant to 14 M.R.S. § 8701

[¶22] Maine's statute does not require a plaintiff to prove that the patent holder's allegation of patent infringement was objectively baseless or made in subjective bad faith pursuant to the federal "bad faith" standard. *See 800 Adept*, 539 F.3d at 1370; *see also* 14 M.R.S. § 8701. Although one of the factors a court may consider as indicative of bad faith under the Maine statute is similar to the federal standard—that "[t]he person knew or should have known that the assertion of patent infringement is meritless"—it is not a

required element of a "bad faith assertion" pursuant to the Maine statute. *See* 14 M.R.S. § 8701(3)(A)(6). Certainly, there will be cases where a plaintiff satisfies the two-part test in order to avoid federal preemption in a claim alleged pursuant to Maine's statute, but there will also be instances where a plaintiff utilizing Maine's statute will not meet its burden. However, "a state law is not per se preempted unless every fact situation that would satisfy the state law is in conflict with federal law."[12] *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998) (citing *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580 (1987)), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). Therefore, "[e]xactly what constitutes bad faith remains to be determined on a case by case basis." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999). The Federal Circuit has described the analysis for conflict preemption in the patent law arena as an "as-applied" approach. *See Hunter Douglas*, 153 F.3d at 1335.

---

[12] Courts regularly employ a case-by-case analysis in issues of conflict preemption. *See, e.g.*, *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580-81, 593-94 (1987) (holding that the specific application of a state regulation did not conflict with federal law but explaining that other applications of the same regulation might subject such application to conflict preemption); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (explaining in its interpretation of the federal Labor Management Relations Act that "[t]he full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis").

14

[¶23]    "To survive summary judgment, [Puritan] must present affirmative evidence sufficient for a reasonable jury to conclude" that the patent holder's assertion was objectively baseless and made in subjective bad faith in order to overcome the "presumption that the assertion of a duly granted patent is made in good faith." *See Golan*, 310 F.3d at 1371 (quotation marks omitted).    "[T]he bad faith standard . . . cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless." *Dominant Semiconductors*, 524 F.3d at 1260.    Accordingly, in determining whether Puritan's specific state law claim is preempted by federal patent law, our first inquiry is whether Copan's assertions of potential patent infringement in its demand letter were objectively baseless.  *See Globetrotter*, 362 F.3d at 1377; *see also 800 Adept*, 539 F.3d at 1370 ("Absent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent.").

1.    Objectively Baseless

[¶24]    To satisfy the objectively baseless prong at the summary judgment stage, Puritan would have to present sufficient evidence that, in light of the clear and convincing standard that would adhere at a trial, would allow a fact-finder to determine that Copan was incorrect or false in its

assertion of its patent. *See Globetrotter*, 362 F.3d at 1377; *Golan*, 310 F.3d at 1371; *Mikohn Gaming*, 165 F.3d at 897 ("In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights."). "[B]ad faith is not supported when the information is objectively accurate." *See Dominant Semiconductors*, 524 F.3d at 1261 (quotation marks omitted).

[¶25]  Based on facts not in dispute, Puritan failed to meet its burden. *See Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 632 (D. Md. 2008), *aff'd* 310 Fed. Appx. 404 (Fed. Cir. 2009). Although Puritan challenged Copan's belief that Puritan infringed Copan's patents, Puritan failed to pinpoint any incorrect statement or falsity in the demand letter. *See Mikohn Gaming*, 165 F.3d at 897; *see also Dominant Semiconductors*, 524 F.3d at 1264 (explaining that the plaintiff "produced no evidence of objective baselessness at all—in other words, it produced no evidence that the [patent holder's] claims of infringement were factually unsound"). Even viewing the evidence in the light most favorable to Puritan, *see Diviney*, 2017 ME 56, ¶ 14, 158 A.3d 5, it has failed to present sufficient evidence[13] that

---

[13] Related to the objectively baseless prong, Puritan argued that its expert witness's deposition testimony that Copan had no reasonable basis for the assertions in its demand letter is evidence of

might allow a fact-finder to determine that Copan's assertion of patent infringement was objectively baseless. *See Dominant Semiconductors*, 524 F.3d at 1263-64.

### 2. Subjective Bad Faith

[¶26] Puritan argues that several circumstances support its claim that Copan's assertion was made in bad faith: (1) Copan's failure to produce a report of an examination comparing Puritan's swabs to Copan's patent; (2) Copan's failure to initiate patent infringement litigation against Puritan after sending its demand letter;[14] (3) Copan's reference to expired German utility models in its demand letter; and (4) the timing of Copan's demand letter, which was sent close in time to the French Gendarmerie's deadline for bids. Although these circumstances "might be probative of subjective baselessness . . . they do not help to show that a jury reasonably could find that [Puritan] could meet its burden of proving by clear and convincing

bad faith. However, Copan's expert testified to the opposite. "The mere fact that [Puritan's] position is reasonable . . . does not equate to a finding that [Copan's] position is objectively baseless." *See GED Integrated Solutions, Inc. v. Durotech Int'l, Inc.*, No. 5:06CV1327, 2008 U.S Dist. LEXIS 35009, at *9 (N.D. Ohio Apr. 29, 2008) (considering a motion for summary judgment on a state law claim relating to the assertion of patent infringement). Furthermore, although "these two experts disagree about the existence of infringement, such disagreement does not create an issue of fact." *See id.*

[14] During the pendency of this appeal, Copan filed a lawsuit against Puritan in the United States District Court for the District of Maine, alleging patent infringement and false advertising in violation of federal and state laws. *See Copan Italia, S.p.A. v. Puritan Medical Products Company LLC*, No. 1-18-cv-00218-JDL (D. Me. filed June 1, 2018). That pending lawsuit does not affect this case.

evidence that [Copan's] infringement allegations were objectively baseless." *See Dominant Semiconductors*, 524 F.3d at 1263-64. "Subjective considerations of bad faith are irrelevant if the assertions are not objectively baseless." *GP Indus.*, 500 F.3d at 1375. Because we conclude that Copan's assertion of patent infringement was not objectively baseless, we do not reach the second part of the analysis, and therefore Puritan's state law claim fails to avoid federal preemption.

[¶27] Our determination that federal patent law preempts Puritan's claim in this case does not mean that Maine's statute is preempted as a whole.[15] *See Hunter Douglas*, 153 F.3d at 1335 (citing *Cal. Coastal Comm'n*, 480 U.S. at 580-81). A claim alleged pursuant to 14 M.R.S. § 8701 can survive federal preemption if the plaintiff presents sufficient evidence to allow a

---

[15] Contrary to the concurrence's assertion, we are not implying that 14 M.R.S. § 8701 (2017) is unconstitutional. *See* Concurring Opinion ¶ 37. Rather, we state only that Puritan's specific *claim* is preempted. *See Boydstun Equip. Mfg., LLC v. Cottrell, Inc.*, No. 3:16-cv-790-SI, 2017 U.S. Dist. LEXIS 175659, at *50 (D. Or. Oct. 24, 2017) (explaining that "[the plaintiff's] claim under [Oregon's 'Patent infringement claim made in bad faith' statute] is preempted by federal law" after conducting an analysis pursuant to *Globetrotter*, 362 F.3d at 1374-77). Furthermore, the doctrine of constitutional avoidance is inapplicable here. *See* Concurring Opinion ¶ 36. Courts are divided on whether the doctrine applies to questions of federal preemption, but even the courts that hold that it does apply explain that the preemption issue should be avoided if there are "alternative independent state law grounds for disposing of a case." *See Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828-29 (4th Cir. 2010) (ultimately reaching the preemption issue after determining that the only independent state law ground that could dispose of the entire case—the violation of the statute of limitations—failed); *but see Colo. Dep't of Pub. Health & Env't v. United States*, 693 F.3d 1214, 1222 (10th Cir. 2012); *N.J. Payphone Ass'n v. Town of West New York*, 299 F.3d 235, 239 n.2 (3d Cir. 2002). Because there are no alternative, independent grounds to dispose of this case, we cannot avoid addressing the preemption issue.

18

fact-finder to determine that the defendant's assertions of patent infringement were both objectively baseless and made in subjective bad faith. *See Globetrotter*, 362 F.3d at 1374; *see also 800 Adept*, 539 F.3d at 1370.

## III. CONCLUSION

[¶28] The trial court did not have the benefit of the precedent we now establish and granted summary judgment in favor of Copan on the merits of Puritan's state law claim after concluding that it was not preempted by federal patent law. In its preemption analysis, the court conflated the test for federal preemption with the test for federal jurisdiction.[16] Because we hold that federal patent law preempts Puritan's state law claim, we affirm the grant of summary judgment in favor of Copan on that basis. *See Bakal v. Weare*, 583 A.2d 1028, 1030 (Me. 1990) (explaining that "even though the basis for the court's entry of summary judgment for [defendant] was erroneous, we affirm

---

[16] The trial court's analysis focused on whether a state court had jurisdiction to consider the state law claim of bad faith assertion of patent infringement. The trial court stated that "[f]ederal district courts have exclusive original jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" (Quoting 28 U.S.C.S. § 1331 (LEXIS through Pub. L. No. 115-193)). It explained that although patent law has typically been a creature of federal law, "[n]o element of the claim or element delineated by statute requires the [c]ourt to determine a question of federal patent law." It therefore concluded that the claim was not preempted and that it had jurisdiction to consider the claim. However, the court's analysis neglected to consider the proper test for preemption of this type of claim: whether the state law claim in this case conflicts with federal patent law's protection of good faith assertions of patent infringement. *See Globetrotter*, 362 F.3d at 1374; *see also Boydstun Equip. Mfg.*, 2017 U.S. Dist. LEXIS 175659, at *49.

the judgment because there exists another reason why [defendant] is entitled to judgment as a matter of law.").

The entry is:

Judgment affirmed.

_____

ALEXANDER, J., concurring.

[¶29]  Title 14 M.R.S. § 8701 (2017) provides critical protection for Maine businesses and jobs from abusive, bad faith claims of patent infringement.  The protection offered by section 8701 is particularly important to discourage bad faith claims related to the manufacture of health care products and devices.  In this field, patent litigation is used to attempt to create monopolies on particular products that some exploit to charge exorbitant prices and reap huge profits from the sale of drugs and other products that cost little to manufacture—escalating the already high cost of health care to the detriment of the public health and welfare.

[¶30]  The dispute here involves absorbent swabs, absorbent material on the head of a thin stick, commonly available and applied to a variety of uses in forensic medicine, personal care, and health care.  From the depictions in the record, the products at issue are, in reality, glorified "Q-tips."  The parties

are disputing whether the manner of attaching the absorbent material to the head of the stick by inserting strands of the material into the head of the stick is subject to a patent giving Copan Italia a monopoly on swabs with absorbent material attached in that manner.

[¶31] The Court's opinion aptly summarizes the purposes and importance of Maine's product protection law.

> In 2014, Maine's Legislature enacted 14 M.R.S. §§ 8701-8702, entitled Actions for Bad Faith Assertion of Patent Infringement. *See* P.L. 2013, ch. 543 (effective Aug. 1, 2014). In doing so, Maine joined a growing number of states that have passed similar laws in an attempt to address the problems presented by patent trolls[17] and bad faith assertions of patent infringement. *See An Act Regarding Bad Faith Assertions of Patent Infringement: Hearing on L.D. 1660 Before the J. Standing Comm. on the Judiciary*, 126th Legis. (2014) (testimony of John D. Delahanty, Esq.); Paul R. Gugliuzza, *Patent Trolls and Preemption*, 101 Va. L. Rev. 1579, 1593 (2015).

Court's Opinion ¶ 19.

[¶32] Recognizing the importance of the protections provided to Maine businesses and jobs by this law, the trial court carefully and critically reviewed the material facts presented to it by the parties. After review, the court concluded that Puritan Medical Products Company LLC had failed to establish any dispute as to material fact that Copan Italia's assertions of patent

---

[17] Patent trolls are described in the Court's footnote 11.

infringement were made in bad faith. Because Puritan had not established the element of bad faith required for a section 8701 claim, the trial court granted Copan's motion for summary judgment. Because the trial court properly evaluated the materials before it and granted summary judgment, we should affirm that grant of summary judgment.

[¶33] Instead of affirming the trial court's grant of summary judgment, the Court elects to reach out, invoke the federal law of preemption, and hold that, considering the materials before it, the trial court erred in even reaching the merits of the section 8701 bad faith claim. The Court holds, in effect, that the section 8701 claim in this case, and, by implication, most section 8701 claims, are preempted by federal patent law.

[¶34] The federal law of preemption presents a question of the constitutionality of application of state law, here section 8701, as preempted by the Supremacy Clause, art. VI, cl. 2, of the United States Constitution. The Court states: "The Supremacy Clause of the United States Constitution states that the 'Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land.' U.S. Const. art. VI, cl. 2. Federal preemption of state law takes three forms: express preemption, field preemption, and

conflict preemption." Court's Opinion ¶ 13 (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990)).

[¶35] The Court's approach puts the cart before the horse, reaching out to address preemption before addressing the merits of the trial court's ruling in favor of Copan. Had the trial court found that Puritan had established a dispute as to material fact regarding the bad faith issue under the Maine law, the trial court would then have had to address the issue of federal preemption before it proceeded to address the merits of the bad faith claim. Some preemption opinions cited by the Court at paragraphs 14-15 appear to require just such an analysis of the validity of the bad faith claim before deciding the preemption issue. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005); *Globetrotter Software, Inc. v. Elan Comput. Grp.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004).

[¶36] Federal precedent establishes that the constitutional preemption issue should be reached only when there is no alternative, independent grounds to dispose of this case. *See Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir. 2010) (noting that a court should decide a case on an independent state-law basis if that basis allows the court to avoid deciding a constitutional question such as preemption). *But see*

*Colorado Dep't of Pub. Health & Environment v. United States*, 693 F.3d 1214, 1222 (10th Cir. 2012) (citing *Douglas v. Seacoast Prods., Inc.*, 431 U.S. 265, 272 (1977) (stating that federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, but the Supreme Court has treated preemption "as 'statutory' for purposes of [the Court's] practice of deciding statutory claims first to avoid unnecessary constitutional adjudications.")). The trial court's ruling in favor of Copan provides the independent grounds to avoid the preemption issue.

[¶37] Having granted Copan's motion for summary judgment, the trial court was not required to consider whether the Supremacy Clause applied to preempt the section 8701 action. We should not be suggesting otherwise. Reaching the preemption issue before analyzing the merits of the trial court's judgment implies that the important business protection adopted in the bad faith assertion of patent infringement law, section 8701, is unconstitutional because it is preempted. While the Court, in footnote 15, suggests that a section 8701 claim may not always be preempted, the standards the Court sets to reach the merits of any State claim appear virtually unattainable.

[¶38] Our review of a claim that a statute, such as section 8701, is unconstitutional must begin with a presumption that the law is constitutional.

24

*Godbout v. WLB Holding, Inc.,* 2010 ME 46, ¶ 5, 997 A.2d 92. Respecting this deferential consideration of statutes that the Legislature has deemed it important to enact, we have said that when an appeal presents a constitutional challenge to a statute—and a Supremacy Clause preemption claim is a constitutional challenge—we will avoid addressing the constitutional issue if the appeal can be decided by addressing issues that do not implicate a constitutional violation. *Bates v. Dep't of Behavioral & Developmental Servs.,* 2004 ME 154, ¶ 85, 863 A.2d 890; *Hannum v. Board of Environmental Protection,* 2003 ME 123, ¶ 18, 832 A.2d 765.

[¶39] Because the trial court rejected Puritan's claim by its grant of Copan's motion for summary judgment, we should avoid addressing the constitutional preemption issue by affirming that grant of summary judgment. We should not issue an opinion undermining the validity of the important protection for Maine businesses and jobs provided by section 8701.

[¶40] I would affirm the trial court's decision granting Copan's motion for summary judgment without addressing the preemption issue.

Thomas E. Getchell, Esq. (orally), Troubh Heisler, Portland, for appellant Puritan Medical Products Company LLC

David P. Silk, Esq., Benjamin M. Leoni, Esq., and Rebecca G. Klotzle, Esq. (orally), Curtis Thaxter LLC, Portland, for appellee Copan Italia S.p.A.

Business and Consumer Docket docket number CV-2015-64
FOR CLERK REFERENCE ONLY