STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
CIVIL ACTION
DOCKET NO. BCD-CIV-2023-00038

CATHERINE EDGE, on behalf of
herself and all others similarly situated,

   Plaintiff,

   v.

INFINITY FEDERAL CREDIT UNION,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER DENYING IN PART
AND GRANTING IN PART
DEFENDANT'S MOTION TO
DISMISS

## **BACKGROUND**

Defendant Infinity Federal Credit Union (the "Defendant") has brought a Motion to Dismiss the Class Action Complaint filed by Plaintiff Catherine Edge (the "Plaintiff"). Plaintiff, on behalf of herself and all other similarly situated, filed suit against Defendant alleging breach of contract, unjust enrichment, and violation of the Maine Unfair Trade Practices Act ("MUTPA"), 5 M.R.S. §§ 205-A-214, flowing from Defendant's fee practices.[1] Plaintiff filed her opposition to Defendant's Motion to Dismiss on August 4, 2023, and Defendant replied on August 18, 2023. The Court decides Defendant's motion based on its review of Plaintiff's Class Action Complaint, the exhibits attached thereto, and the motion papers submitted by the parties. M.R. Civ. P. 7(b)(7). For the foregoing reasons, Defendant's Motion to Dismiss is DENIED IN PART and GRANTED IN PART.

## **MOTION TO DISMISS STANDARD**

A motion to dismiss under Maine Rule of Civil Procedure 12(b)(6) "tests the legal

---

[1] Plaintiff has since expressly declined to pursue her unjust enrichment claim. Pl.'s Opp'n to Def.'s Mot. Dismiss 16 n.8.

sufficiency of the complaint and does not probe the merits of the underlying case." *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 19, 192 A.3d 589 (internal quotation marks omitted). In reviewing a motion to dismiss, courts must "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123 (citing *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quotation marks omitted).

Generally, a court may consider only the pleadings on a motion to dismiss. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 8-9, 843 A.2d 43. However, official public documents, documents central to the plaintiff's complaint, and the documents referred to therein may also be considered in a ruling on a motion to dismiss without converting the motion into a motion for summary judgment when the documents' authenticity is not challenged. *Id.* ¶ 10. Here, Plaintiff attached copies of the Membership Agreement and Disclosures that she entered into with Defendant, a schedule of fees copied from Defendant's website[2], and a copy of Defendant's Courtesy Pay Overdraft Services Disclosure. Because Plaintiff attached these documents to her Class Action Complaint, they are properly considered by the Court in deciding Defendant's Motion to Dismiss.

## FACTUAL ALLEGATIONS

Defendant is a federal credit union that provides retail banking services to its members, including Plaintiff. Compl. ¶ 6. Plaintiff is an individual who maintained a checking account with

---

[2] Plaintiff submitted one copy of Defendant's fee schedule from 2023, Compl. Ex. B, and another from 2021, Pl.'s Opp'n to Def.'s Mot. Dismiss Ex. 9 [hereinafter "Fee Schedule"]. The Court relies on the 2021 version for the purpose of deciding Defendant's Motion to Dismiss. Even though that version was not attached to the Class Action Complaint, it is specifically referred to therein and is otherwise integral to Plaintiff's claims. *See Moody*, 2004 ME 20, ¶¶ 8-9, 843 A.2d 43.

2

Defendant at all times relevant to this lawsuit. Compl. ¶ 5. Plaintiff was provided Defendant's Membership Agreement and Disclosures (the "Agreement") when she became one of Defendant's members. Compl. Ex. A.

Relevant here, the Agreement provides: "[i]f an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item ([insufficient funds])." Compl. ¶¶ 21, 23; Compl. Ex. A, at 9. The Agreement then references Defendant's Fee Schedule. The Fee Schedule listed a $35 fee that was triggered when Defendant paid an item presented without sufficient funds on account, and a $32 fee triggered when an item presented without sufficient funds on account was returned. Fee Schedule, at 1.

Defendant construes the Agreement to permit it to charge a fee each time an "item" is "presented" to it for payment. Compl. ¶¶ 24-27. For example, Defendant will charge a fee when an item is first presented but it is determined that the account contained insufficient funds, as well as a second fee when the item is re-presented or reprocessed (e.g., when a merchant initiates a request for payment through the Automated Clearing House network after a customer uses her debit card to pay for goods or services). Compl. ¶ 14. on or around February 8, 2019, Plaintiff was assessed multiple fees for the same transaction. Compl. ¶ 36. The same occurred on or around February 15, 2019, and December 15, 2021. Compl. ¶¶ 37-38.

## DISCUSSION

The Court addresses Defendant's Motion to Dismiss in the context of Plaintiff's causes of action for breach of contract and violation of the MUTPA, respectively.

I.  **Whether Plaintiff's Class Action Complaint adequately states a claim for breach of contract.**

Plaintiff interprets the Agreement to permit Defendant to charge one overdraft or insufficient funds fee per "item." Compl. ¶ 34. According to Plaintiff, Defendant's fee practices

3

constitute a breach of the Agreement. Defendant, however, interprets the Agreement to permit it to charge either the overdraft or insufficient funds fee each time an "item" is "presented" for payment, no matter whether by the account holder or by a third-party service provider. Def.'s Mot. Dismiss 9. This is a "true breach of contract" dispute going to the meaning of the Agreement's terms that is not pre-empted by federal law. *See Lambert v. Navy Federal Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 WL 3843064, at \*2 (E.D. Va. Aug. 14, 2019). Determination of whether a contract or agreement is ambiguous is a question of law. *Acadia Ins. Co. v. Buck Const. Co.*, 2000 ME 154, ¶ 8, 756 A.2d 515. Contractual language is ambiguous when it is "reasonably susceptible to different interpretations." *Id.* ¶ 9.

The Court observes that this case is similar to *Churchill v. Bangor Savings Bank*, and Plaintiff's opposition to Defendant's Motion to Dismiss understandably leans heavily on this Court's determination in *Churchill* that the word "item" as used throughout the Agreement is ambiguous. *See Churchill v. Bangor Savings Bank*, No. BCD-CIV-2021-00027, 2021 WL 3700676, at \*4 (Me. B.C.D. Aug. 12, 2021). Here, as in *Churchill*, it is unclear whether the Agreement authorizes Defendant to charge members more than one fee per item. Like the contract in *Churchill*, the word "item" is not specifically defined within the Agreement. Compl. Ex. A, at 3-4. When the language of the Agreement is paired with the Fee Schedule, the intent of the parties regarding multiple presentments is unclear. As illustrated by the parties' briefs, the word "item" as it is used within the Agreement is reasonably susceptible to different interpretations. On the record before the Court at the Motion to Dismiss stage, the Agreement's language appears ambiguous and does not provide a basis for the Court to dismiss Plaintiff's breach of contract claim.[3] Therefore, the Motion to Dismiss is denied as to Plaintiff's breach of contract claim.

---

[3] Accordingly, the Court need not address Plaintiff's breach of contract argument based on an implied covenant of good faith and fair dealing. Pl.'s Opp'n to Def.'s Mot. Dismiss 15.

**II. Whether Plaintiff's Class Action Complaint adequately states a claim for violation of the MUTPA.**

Defendant is a federal credit union, which entities are governed by the Federal Credit Union Act, 12 U.S.C. §§ 1751-1795k, the Truth in Savings Act, 12 U.S.C. §§ 4301-4313, and by the regulations implementing them, *e.g.* 12 C.F.R. §§ 700.1-761.1. Those regulations provide, in relevant part, that federal credit unions are authorized to determine, free from state regulation, the types of disclosures for their products. *Lambert*, 2019 WL 3843064, at *2 (quoting 49 Fed. Reg. 46552-01, 46552 (Nov. 27, 1984)). Accordingly, "any state laws that attempt to regulate a federal credit union's authority to determine 'the types of fees or charges'" it assesses its accounts "are expressly pre-empted."[4] *Whittington v. Mobiloil Federal Credit Union*, No. 1:16-CV-482, 2017 WL 6988193, at *7 (E.D. Tex. Sept. 14, 2017) (citing 12 C.F.R. § 701.35(c)). So too are state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness with its fee practices. *Lambert*, 2019 WL 3843064, at *2 (discussing cases).

Here, Plaintiff's claim for violation of the MUTPA alleges that "Defendant knowingly and intentionally employed an unfair and deceptive policy and practice of charging two or more fees on the same item and misrepresenting and failing to disclose its policy and practice of charging multiple fees on the same item." Compl. ¶ 84; *see* Compl. ¶¶ 2, 13. Embedded within Plaintiff's Prayer for Relief is the request that this Court "[e]njoin Defendant from engaging in the practices" complained of. Compl. Prayer for Relief ¶ G. Based on these allegations and request for relief, the Court views Plaintiff's MUTPA claim as one based on Defendant's purported failure to disclose the fee practice at issue. *See Monson v. Capital Credit Union*, No. 08-2022-CV-1697, 2023 WL 4174471 (D.N.D. Apr. 6, 2023). Such claims are pre-empted by federal law. *Lambert*, 2019 WL

---

[4] "Express preemption occurs when Congress defines explicitly the extent to which its enactments pre-empt state law." *Puritan Med. Products Co. LLC v. Copan Italia S.P.A.*, 2018 ME 90, ¶ 13, 188 A.3d 853 (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990)) (internal quotation marks omitted).

3843064, at *2. Accordingly, Plaintiff's MUTPA claim must be dismissed.

The Court is not persuaded by Plaintiff's argument that its MUTPA claim is based on Defendant's purported affirmative misrepresentations, in which case it would not be pre-empted. *Id.* Plaintiff alleges that Defendant made affirmative misrepresentations in violation of the MUTPA when it abused its discretion "to interpret undefined terms [within the Agreement] in a manner harmful to consumers and beneficial to Defendant." Compl. ¶ 85. However, this allegation must be read against this Court's determination (and Plaintiff's fall-back argument) that the Agreement is ambiguous. It cannot be said that Defendant affirmatively and knowingly misrepresented its fee mechanics within the Agreement when Defendant's reading of the Agreement is within the universe of interpretations to which it is "reasonably susceptible." *Cf. School Union No. 37 v. United Nat'l Ins. Co.*, 617 F.3d 554, 564 (1st Cir. 2010) (denial of coverage by insurer not in bad faith when coverage provision was ambiguous); *Seabury Housing Assocs. v. Home Ins. Co.*, 695 F. Supp. 1244, 1248 (D. Me. 1988). Hence, Plaintiff's Class Action Complaint does not adequately state a claim for violation of the MUTPA.

## CONCLUSION

For the foregoing reasons:

Defendant's Motion to Dismiss is DENIED as to Plaintiff's breach of contract claim contained in Count I of the Class Action Complaint.

Defendant's Motion to Dismiss is GRANTED as to Plaintiff's Count II unjust enrichment claim, since Plaintiff has expressly declined to pursue that claim. Count II is dismissed.

The Motion to Dismiss is GRANTED as to Plaintiff's claim under the Maine Uniform Trade Practices Act contained in Count III. Count III is dismissed.

6

So ordered.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: **08/21/2023**

_____
Michael A. Duddy, Judge
Business & Consumer Court

Entered on the docket:  08/21/2023