STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-21-35

PETER & KATHY MASUCCI et. al. )
)
Plaintiffs )
)
)
)
v. )
)
)
)
JUDY'S MOODY, LLC, et. al. )      COMBINED ORDER ON PENDING
)      MOTIONS
Defendants )
)
)
v. )
)
)
AARON FREY, in his capacity as Attorney )
General of the State of Maine )
)
Party in Interest )
)

Before the Court are multiple pending motions, they are:

- Defendants Jeffrey and Margaret Parents' ("Parents") Motion to Dismiss brought pursuant to M.R. Civ. P. 12(b)(6)
- Defendants Judy's Moody LLC, OA 2012 Trust, and Ocean 503 LLC's ("Legal Entity Defendants") Motions for More Definite Statements
- Defendants Edward and Christine Page, James Li, Kim Newbie and Robin Seeley's ("PLNS Defendants'") Motion for Attorney's Fees and Costs filed pursuant to the Anti-SLAPP Statute, 14 M.R.S. § 556 (2022)
- Legal Entity Defendants' Motion for Reconsideration[1]

---

[1] A complete list of Plaintiffs and Defendants participating in this action is provided in the Court's April 15th order. *See Masucci et. al. v. Judy's Moody et. al.*, *Order* at 2, (April 15, 2022). For ease of reference, the term "Plaintiffs," as used in this order, refers to all remaining Plaintiffs who have standing to bring suit. The Defendants are referred to in the following three groups: Parents (Jeffrey and Margaret Parent), PLNS Defendants (Edward and Christine Page, James Li, Kim Newby, and Robin Seeley) and the Legal Entity Defendants (Judy's Moody, LLC, OA 2012 Trust, Ocean 503 LLC.)

1

REC'D CUMB CLERKS OF
AUG 1 '22 AM9:30

Each of the pending motions are addressed below.

## I. Parents' Motion to Dismiss

The effect of this Court's April 15th Order was as follows: The PLNS Defendants had all counts against them dismissed. The Legal Entity Defendants had all counts — except for Count IV — against them, dismissed. All Counts remained against the Parents.

Presumably having seen the success of their counterparts, the Parents brought the current 12(b)(6) motion, seeking to dismiss all counts, including Count IV, against them.

### A. Legal Standard

"A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the claim." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166 (quoting *New Orleans Tanker Corp, v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673). When the court reviews a motion to dismiss, the complaint is examined "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426. Allegations in the complaint are deemed true for the purposes of deciding a motion to dismiss. *Id.* "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)) (internal quotations omitted).

### B. Factual Background

The Parents are named as Defendants in the complaint "as individuals residing in Waldoboro, Maine." The complaint makes two factual allegations against them: "(1) They wrongfully claim title to intertidal land that abuts their property in the same town; and (2) They

have called law enforcement to remove people lawfully harvesting seaweed on land they wrongfully claim is theirs." (Compl. ¶¶ 27-28.)

These factual allegations are incorporated into the Plaintiffs' five counts. Count I notice pleads the form of equitable relief requested — a Declaratory Judgment. Counts II and III allege constitutional violations, Count IV seeks a declaratory judgment as to the scope of the public's rights of use in the intertidal zone, and Count V seeks to invalidate upland owners' title to the intertidal lands. The Parents seek to dismiss all counts against them.

## C. Discussion

In this Court's prior order, it dismissed Counts II, III, and V against the Legal Entity Defendants for failure to state a claim. The Court also dismissed all counts against the PLNS Defendants pursuant to their special motion to dismiss filed under 14 M.R.S. § 556. Importantly, the PLNS Defendants and the Legal Entity Defendants, comprise two distinct groups. The Legal Entity Defendants were named in the lawsuit for their decision to restrict access to the intertidal zone to which they have title. The PLNS defendants were named because of their decision to call law enforcement to enforce their title to the intertidal zone. The factual allegations against the Parents are similar to those levied against the PLNS Defendants.

Because the PLNS Defendants were dismissed by operation of Maine's Anti-SLAPP statute, the Court never reached the merits of their concurrently filed 12(b)(6) motion. Had the court reached that analysis with regard to those defendants, it likely would have reached the same conclusion, dismissing all counts except Count IV against them.

With regard to Counts II, III, and V, the analysis with respect to the Parents is the same.[2] The Court concludes, for reasons set forth more fully in its April 15th order, that each of those

---

[2] In the April 15th order, in footnote six, the court noted it would not address Count I of the Complaint because Count I merely notice pleads the form of relief that the plaintiffs seek.

3

counts, as alleged against the Parents, fail to state a claim upon which relief can be granted. Count II fails to state a claim because the Law Court has ruled that the equal footing doctrine cannot serve as a basis for vesting the State with title to the intertidal area; Count III fails to state a claim because the Law Court's intertidal jurisprudence is not improper judicial legislation that violates separation of powers principles; and Count V fails, on statute of limitations grounds, to state a quiet title claim.

In its April 15th Order, the Court permitted Count IV to survive because the Plaintiffs had properly stated a claim for a declaratory judgment expanding the public's usage rights in the intertidal area. The Court held:

> In this case, certain Plaintiffs claim that their access to the ocean's intertidal zone has been restricted by ether signage or verbal instruction to leave or refrain from entering the privately held intertidal zone. Plaintiffs Peter Masucci, Kathy Masucci, William Connerny, William Griffiths, Sheila Jones, Orlando Delogu, Judith Delogu, and Brian Beal all allege that their access to the intertidal zone is restricted either by signage or verbal warning and direction.
>
> While it is not clear from the complaint itself what activities the Plaintiffs prefer to engage in, in the intertidal area, it is conceivable that the activity of the Massuccis, Connerny, Griffiths, Jones, and the Delogus includes walking, running, or some other form of movement. In Bean's case, he is an academic researcher who seeks to access the intertidal zone to further his marine research. Whether any movement or research related activity is permissible within the intertidal zone has not been specifically addressed by the Law Court. And, given the expansive and broad approach that the Law Court has taken with regard to defining these usage rights, it is conceivable that movement related, or research based activity, may be an acceptable use.

*Masucci et. al. v. Judy's Moody et. al., Order* at 11, (April 15, 2022).

In its order, the Court was clear that under the Law Court's flexible, intertidal jurisprudence, it is conceivable that the declaratory relief the Plaintiffs seek is obtainable with regard to the Legal Entity Defendants. In footnote eleven of that order however, the Court also noted that with regard to those Plaintiffs who seek access to the intertidal zone to commercially

4

harvest sea plants, they have little chance at success — especially considering the Law Court's decision in *Ross v. Acadian Seaplants, Ltd.*, 2019 ME 45, 206 A.3d 283.

Thus, to the extent the Plaintiffs wish to obtain a declaratory judgment allowing commercial seaweed harvest in the intertidal, it is unlikely that they will succeed. However, on a 12(b)(6) motion to dismiss, an unlikelihood of success is not dispositive. The applicable standard is, whether, viewed in a light most favorable to them, the Plaintiffs complaint states a claim pursuant to any legal theory. The Court concludes, under the Law Court's flexible approach to determining allowed intertidal activity, that there is "some legal theory" that would allow the Plaintiffs to obtain a declaratory judgment allowing either certain recreational activities or different, non-Rockweed specific, commercial activity in the intertidal zone.

Accordingly, the Parents' 12(b)(6) Motion is granted with respect to Counts II, III, and V only.[3]

## II. Defendants Judy's Moody LLC, OA 2012 Trust, and Ocean 503 LLC's Motions for More Definite Statements

After this Court's April 15th order permitting Count IV to survive against the Legal Entity Defendants, all three entities — Judy's Moody LLC, OA 2012 Trust, and Ocean 503 LLC — filed Motions for More Definite Statements pursuant to M.R. Civ. P. 12(e).

M.R. Civ. P. 12(e) provides:

---

[3] The Court recognizes the discrepancy that exists between this outcome and the outcome of the prior order which dismissed all counts against the PLNS Defendants who were similarly situated to the Parents. However, to understand this discrepancy, the parties need look no further than the purposes which underlie the separate vehicles for dismissal utilized by the different subsets of Defendants

Maine's Anti-SLAPP statute protects defendants from plaintiffs who attempt, through the courts, to infringe upon an individual's right to petition the government. *See Thurlow v. Nelson*, 2021 ME 58, ¶ 8, 263 A.3d 494. Thus, an Anti-SLAPP Motion requires the court to focus on the reason that suit has been brought. Under 12(b)(6), the question instead is whether the complaint, as filed, has states a legally cognizable claim — these are two different standards. The application of which, here, results in different outcomes for the similarly situated Parents and PLNS Defendants.

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before filing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

M.R. Civ. P. 12(e).

In their respective Motions, the Legal Entity Defendants complain that Count IV fails to identify "(1) how the Plaintiffs are using, or intend to use, the portion of [the Legal Entity Defendants'] property located in the intertidal zone, [and] (2) how and when [the Legal Entity Defendants] prevented any of the Plaintiffs from engaging in those uses or intended uses on [the Legal Entity Defendants'] property." (Legal Entity Defs. Mot. More. Def. Statement 2.) In response, the Plaintiffs argue that the Defendants waived their right to file a motion for a more definite statement, and that, regardless, their complaint puts the Legal Entity Defendants on fair and adequate notice of their claims.

First, the Court addresses the Plaintiffs' threshold argument that the Legal Entity Defendants are precluded from making a Rule 12(e) motion by M.R. Civ. P. 12(g). That rule provides:

**(g) Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom *any defense or objection* then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated

M.R. Civ. P. 12(g) (emphasis added).

The Plaintiffs' threshold argument is defeated by the text of Rule 12(g) itself. Rule 12(g) requires that a party with an available *defense* or *objection* raise that defense or objection at the appropriate time. M.R. Civ. P. 12(e) does not provide a defense or an objection. Instead, it

6

provides a procedural mechanism by which a litigant may request more information from a prosecuting party in order to fully respond to the allegations levied in a pleading.[4] Thus, the service that Rule 12(e) provides to perplexed litigants does not constitute a "defense" or "objection" within the scope of Rule 12(g).

Second, the Court takes up the Legal Entity Defendant's claims that the Plaintiffs' complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." M.R. Civ. P. 12(e). Here, under Maine's lax pleading standards, the Court sees no need for the Plaintiffs to file a more definite statement.

To be a proper pleading, M.R. Civ. P. 8(a) requires a Plaintiff to include "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for judgment for the relief which the pleader seeks." M.R. Civ. P. 8(a). As the Court concluded in its April 15th Order, Count IV of the Plaintiffs' complaint seeks the following: a declaratory judgment expanding the public's rights of use in the intertidal area to include certain recreational activities other than fishing, fowling, and navigation.

The Court understands the Legal Entity Defendants desire for more information regarding how the Plaintiffs use the intertidal area and what the Legal Entity Defendants do to prevent that usage. However, under M.R. Civ. P. 8(a), that level of specificity is not required at the pleading stage. *See Burns v. Architectural Doors & Windows*, 2011 ME 61 ¶ 21, 19 A.3d 823 ("[A]n initial pleading may be presented in general terms . . . [but later] a plaintiff must be prepared to clearly identify the asserted cause or causes of action and the elements of each claim.") Count IV of the complaint, in its current form, contains sufficient allegations to which

---

[4] The Plaintiffs argue that M.R. Civ. P. 12(g) is "in the interest of judicial economy and meant to eliminate unnecessary postponement of litigation proceedings as applied to pre-answer motions." If anything, a motion for a more definite statement helps avoid later postponement of judicial proceedings by forcing a plaintiff to fully flush out their claims early on.

the remaining Defendants may respond. Accordingly, the Motions for a More Definite Statement are denied.

**III. PLNS Defendants' Motion for Attorneys Fees Pursuant to Anti-SLAPP Statute 14 M.R.S. § 556**

After obtaining a dismissal under Maine's Anti-SLAPP statute as part of this Court's April 15th order, the PLNS Defendants have returned to ask for attorney's fees and other reasonable costs associated with successfully litigating their Anti-SLAPP Motion. *See* 14 M.R.S. § 556 (2022) ("If the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters.")

In support of their request, they assert that the Plaintiffs' claims lacked merit — especially in light of the 12(b)(6) dismissals of Counts II, III and V — and that the Plaintiffs' claims were clearly made in retaliation for the PLNS Defendants' lawful exercise of their first amendment rights. In opposition, the Plaintiffs claim that their suit was not meritless and that, given the Law Court jurisprudence on the issue, filing a claim against upland property owners exercising — what the Plaintiffs claim to be — their "unlawfully obtained intertidal rights," was their only available litigation strategy.

When assessing a request for Attorney's fees, the trial Court considers a number of factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

8

*Mancini v. Scott*, 2000 ME 19, ¶ 10, 744 A.2d 1057. In an Anti-SLAPP case, the court may also consider the merits of the case, with a special consideration of the Anti-SLAPP statute's purposes. *See Maietta Constr. Inc, v. Wainwright*, 2004 ME 53 ¶ 6, 847 A.2d 1169 ("[The Anti-SLAPP Statute] was designed to combat litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants.)

In this case, neither of the parties provide arguments with respect to the *Mancini* factors. Mindful of that coextensive failure, the Court does not blindly engage in such an analysis. Instead, the Court addresses the parties' arguments regarding whether the Plaintiffs' decision to name the PLNS Defendants in the lawsuit had merit.

At the outset, the Court notes that while it may be the case that the Court dismissed most of the Plaintiffs' claims on 12(b)(6) motions, that does not mean the claims were "without merit" for the purposes of awarding attorneys fees in the Anti-SLAPP context. In this case, the Plaintiffs were clearly frustrated by Law Court decisions which restricted their ability to enjoy the intertidal area for certain recreational and/or commercial purposes. Thus, they devised a litigation strategy which involved collecting Plaintiffs who have experienced personal or professional difficulty as a result of the Law Court's decisions. Those Plaintiffs then named, as Defendants, upland property owners who have effectuated the Law Court's holdings and caused their difficulties. Unfortunately for the Plaintiffs, to cause this difficulty, the PLNS Defendants either called law enforcement, or engaged in private and public advocacy in favor of Rockweed conservation, all of which are activities protected by 14 M.R.S. § 556's broad definition of the term "petitioning activity."

Although the decision to name the PLNS Defendants flowed from their petitioning activity, the motivation behind naming them was not to "punish" the PLNS Defendants for

9

"exercising their First Amendment Rights." *Maietta Constr. Inc,* 2004 ME 53 ¶ 6, 847 A.2d 1169. The motivation was to challenge the PLNS Defendants' (and other shorefront owners') ability to restrict access to the intertidal area. The PLNS Defendants were merely identifiable conduits through which the Petitioners hoped to reach their desired result.

Accordingly, the Court determines that the Plaintiffs' suit was not filed with the malintent that the Anti-SLAPP was enacted to punish and dissuade. The Court therefore declines to exercise its discretion to award the PLNS Defendants attorney's fees pursuant to 14 M.R.S. § 556.

## IV. Defendants Judy's Moody LLC, OA 2012 Trust, and Ocean 503 LLC's Motion for Reconsideration

In light of the Plaintiffs' opposition to the Legal Entity Defendants motion for a more definite statement, the Legal Entity Defendants then moved for reconsideration of this Court's decision allowing Count IV of the Plaintiff's complaint to survive dismissal. In support, the Legal Entity Defendants claim that the Plaintiffs opposition to the motion for a more definite statement forecloses the legal sufficiency of their claim because it clarifies that the Plaintiffs are requesting a declaratory judgment that all "public activity" be allowed in the intertidal area. (Pls.'Opp.'n Mot. More Definite Statement 5-6.) The Plaintiffs object to the Legal Entity Defendants' motion on the grounds that the Court cannot consider the Plaintiffs' opposition to the motion for a more definite statement in a Rule 7(b)(5) analysis. Party-in-Interest Frey also objects on similar grounds.

### A. Discussion

"Motions for reconsideration of an order shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). Rule 7(b)(5) is intended to deter disappointed

10

litigants from seeking "to reargue points that were or could have been presented to the court on the underlying motion." *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714. The Rule gives the court "more leeway" when responding to motions that are frequently brought to relitigate fully presented and decided issues. *Ten Voters of City of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 11, 822 A.2d 1196.

In this case, the Court agrees with the Plaintiffs and the Party-in-Interest. On the underlying Rule 12(b)(6) motions which the Legal Entity Defendants have asked this Court to reconsider, the analysis was constrained to the legal sufficiency of the complaint. *See Lalonde*, 2017 ME 22, ¶ 11, 155 A.3d 426. An analysis the Court determined fell in favor of the Plaintiffs.

The Legal Entity Defendants cannot now, on reconsideration, ask this Court to examine a document outside the pleadings for the purposes of reexamining a 12(b)(6) order. Additionally, the Court is not persuaded by the Legal Entity Defendants' arguments that the information contained in the Plaintiffs opposition to the Motion contains new material. Instead, that opposition contains a summary of the allegations contained in Count IV of their complaint. As discussed *supra* 5, Count IV of the complaint — in its current form — does state a legally sufficient claim upon which relief may be granted.

The Court discerns no error in its prior conclusion and identifies no omission or new information which requires a different result. The Legal Entity Defendants' motion for reconsideration is denied.

**Entry Is:**

Defendants Jeffrey and Margaret Parent's Motion to Dismiss is Granted in Part ₊

The Legal Entity Defendants Motions for More Definite Statements are Denied ₊

11

The PLNS Defendants request for Attorney's Fees and Costs under the Anti-SLAPP Statute is Denied.

The Legal Entity Defendants' Motion for Reconsideration is Denied.

The Clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 8/1/22

_____
John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 8/3/22

12

STATE OF MAINE                      SUPERIOR COURT
CUMBERLAND, ss.                    CIVIL ACTION
                                DOCKET NO. RE-21-0035

|  |  |  |
|---|---|---|
| PETER & KATHY MASUCCI et. al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUDY'S MOODY, LLC, et. al. | ) | ORDER |
| | ) | |
| Defendants | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| AARON FREY, in his capacity as Attorney General of the State of Maine | ) | |
| | ) | |
| Party in Interest | ) | |
| | ) | |

REC'D CUMB CLERKS OFC
APR 15 '22 PM4:18

Before the Court are four pending motions. The first is a special motion to dismiss brought pursuant to 14 M.R.S. § 556. The next three are motions to dismiss filed pursuant to Maine Rule of Civil Procedure ("M.R. Civ. P.") 12(b)(6). For the reasons set forth herein, the special motion to dismiss filed by the PLNS Defendants is GRANTED. The motions to dismiss filed by the remaining defendants are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Every motion pending before this court seeks dismissal of the Plaintiffs' complaint. However, each pending Motion is filed by a different group of Defendants. Thus, the general

1

facts underlying this case are recited first and the motions requesting dismissal are addressed in turn.

## I.   Parties and Counsel

In this case there are several Plaintiffs and Defendants. The named Plaintiffs are Peter Masucci, Kathy Masucci, Robert Morse, George Seaver, Greg Tobey, Bonnie Tobey, Hale Miller, John Grotton, Leroy Gilbert, Jake Wilson, Dan Harrington, Orlando Delogu, Judith Delogu, William Connerny, William Griffiths, Sheila Jones, Susan Domizi, Brian Beal, Charles Radis, Sandra Radis, Amanda Moeser, Chad Coffin, Lori Howell and Tom Howell.

The named Defendants are Judy's Moody, LLC, OA 2012 Trust, Ocean 503, LLC, Edward Page, Christine Page, Jeffrey Parent, Margaret Parent, James Li, Kim Newby, and Robin Seeley. Aaron Frey has also been named as a Party in Interest, in his capacity as the Attorney General of the State of Maine.

This large number of named parties corresponds to a sizable number of attorneys who have entered appearances. For the plaintiffs, not including pro se Plaintiff, Orlando Delogu, the following attorneys are of record: Benjamin Ford, John Coon, and Sandra Guay of Archipelago Law, LLC.

The Defendants are not so uniformly represented. Defendants Jeffrey and Margaret Parent are proceeding pro se. Gordon Smith of Verrill, represents Defendants Edward Page, Christine Page, James Li, Kim Newby, and Robin Hadlock Seeley ("PLNS Defendants"). David Silk and Curtis Thaxter, LLC represent Defendants Judy's Moody LLC and OA 2012 Trust ("JM & OA Defendants"). Robert Thomas and Paige Gilliard of Pacific Legal have also been admitted pro hac vice as part of JM & OA Defendants' defense team. Joseph Talbot and Emily Arvizu of Perkins Thompson, represent Ocean 503, LLC ("Ocean 503").

2

Party in Interest Aaron Frey, in his capacity as Attorney General of the State of Maine, is represented by Assistant Attorney Generals Lauren Parker and Scott Boak.

## II.    GENERAL BACKGROUND

This lawsuit is the latest battle in the war over the intertidal lands off Maine's coast. The intertidal zone encompasses the portion of the sea floor which lies between the mean high and low water marks of the tide. The intertidal zone has long been held to be property of the private landowners who live upland of the mean high water mark. Their ownership, however, is subject to certain public usage rights: fishing, fowling, navigation and any other uses reasonably incidental or related thereto. *Bell v. Town of Wells*, 557 A.2d 168, 169 (Me. 1989).

In their complaint, plaintiffs raise five separate counts, and pray for relief in the form of four separate declaratory judgments: (1) That the State of Maine holds title to all intertidal land, in trust for the public, without limitation to fishing, fowling, and navigation and with the exception of land previously alienated pursuant to the Submerged Land Act and for the purposes of promoting commerce; (2) That Pursuant to the Maine Statehood Act, Maine entered the Union on an equal footing with all other states, and consequently holds title to its intertidal land, except for discrete parcels alienated to facilitate marine commerce; (3) That pursuant to the Maine Constitution, only the Maine legislature has the authority to alienate State intertidal land but has never done so with respect to intertidal lands not used in maritime commerce; (4) That the alienation of all intertidal land in Maine may not be accomplished through "judicial legislation" or by adherence to pre-statehood Massachusetts case law.

The responsive pleadings which have been filed in an effort to dismiss the complaint are addressed in turn below.

## DISCUSSION

3

First, the Court addresses whether the Plaintiffs have standing to bring the instant action. Next, it addresses PLNS Defendants' Special Motion to Dismiss, and finally, the Court addresses the various 12(b)(6) motions.

## I. Standing

Since standing is a prerequisite to the jurisdiction of this Court, the Court addresses this argument, raised in the 12(b)(6) motions, first.

"Standing is a threshold issue bearing on the Court's power to adjudicate disputes." *Lamson v. Cote*, 2001 ME 109, ¶ 11, 775 A.2d 1134 (quoting *Franklin Prop. Trust v. Foresite, Inc.*, 438 A.2d 218, 220 (Me. 1981). "In Maine, standing jurisprudence is prudential, rather than constitutional." *Roop v. City of Belfast*, 2007 ME 32, ¶ 7, 915 A.2d 966, 968. "While there is no set formula for determining standing, a court may limit access to the courts to those best suited to assert a particular claim." *Id.* "In addition, the question of whether a specific individual has standing is significantly affected by the unique context of the claim." *Id.*

For a plaintiff to have standing to raise an issue in a declaratory judgment action, the plaintiff must establish that they have "'a claim of right buttressed by a sufficiently substantial interest to warrant judicial intervention.'" *Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 595 (Me. 1986). *See also Chase v. Eastman*, 563 A.2d 1099, 1103 n.6 (Me. 1989) ("In order to have "standing" to assert a claim or cause of action, "[a] party must assert a personal stake in the outcome of the litigation and present a real and substantial controversy touching on the legal relations of parties with adverse legal interests.")

Here, this Court concludes that the following Plaintiffs have standing to maintain an action against the named defendants: Robert Morse, George Seaver, John Grotton, Hale Miller, Leroy Gilbert, Jake Wilson, Dan Harrington, Susan Domizi, Greg Tobey, Amanda Moeser, Chad

4

Coffin, Lori Howell, Tom Howell, Peter Masucci, Kathy Masucci, William Connerny, William Griffiths, Sheila Jones, Orlando Delogu, Judith Delogu, and Brian Beal.[1]

The Plaintiffs who have standing in this action fit two general categories: (a) those who have had their access to the intertidal zone for recreational purposes significantly restricted as a result of intertidal jurisprudence (Massuccis, Connerny, Griffiths, Jones, Delogus, and Beal); and (b) those who operate in Maine's marine economy and have had their business interests affected by the same (Morse, Seaver, Grotton, Miller, Gilbert, Wilson, Harrington, Domizi, Greg Tobey, Moeser, and the Howells).

For each category of Plaintiff to have standing, they must have a claim of right buttressed by a sufficiently substantial interest to warrant judicial intervention. With respect to the first group of Plaintiffs — those who live near the water and wish to access the intertidal zone for purposes other than fishing, fowling, and navigation — they hold a claim of right to the intertidal zone via the public's easement. Additionally, these plaintiffs have a substantial interest in use and enjoyment of the intertidal zone for ocean related activities.

With respect to the second group — those who have business or commercial interests in the intertidal zone — they too have a claim of right. Their claim of right is the same as the first group. The interest which buttresses it, however, is different — it is economic in nature. As the complaint notes, were these Plaintiffs to have access to the intertidal zone to carry on their trade or business, their operations would be more profitable. Thus, they have a claim of right, buttressed by a substantial interest, which potentially warrants judicial intervention.

---

[1] The Plaintiffs who do not have standing, Charles Radis, Sandra Radis, and Bonnie Tobey all do not have a substantial interest buttressing their claim of right to the intertidal zone. In the Radis's case, their mere existence as upland property owners who have an interest in giving the general public access to intertidal land does not warrant intervention. In Tobey's case, her general claims that her interest in her "livelihood" confers standing is equally unavailing.

Accordingly, all but three Plaintiffs have sufficient standing to bring their claims to this Courthouse's door.

## II. PLNS Defendants' 14 M.R.S. § 556 Special Motion to Dismiss

The Court next addresses the PLNS Defendants' special motion to dismiss filed pursuant to Maine's statute preventing strategic lawsuits against public participation ("anti-SLAPP statute").

### A. Factual Background

The following facts are derived from a review of the complaint, the special motion to dismiss, the opposition, and the various accompanying affidavits.[2] *See Nader v. Me. Democratic Party*, 2013 ME 51, ¶ 2, 66 A.3d 571. The PLNS Defendants are the following individuals: Edward and Christina Page (collectively "Pages"), James Li, Kim Newby (collectively "Li & Newby"), and Robin Seeley.

*1. The Pages*

The Pages own coastal property on an island located in Harpswell, Maine, including the intertidal zone adjacent to their upland property. This intertidal zone is covered with rockweed.

In September of 2018, Edward Page observed a rockweed harvester cutting rockweed from the intertidal zone without his, or his wife's permission. Believing that his deed gave him title to the adjacent intertidal area, he emailed Maine Marine Patrol to report what he observed. After reviewing the Pages deed to their property and speaking with a Cumberland County Assistant District Attorney, Maine Marine Patrol Officer Thompson confirmed their intertidal ownership and informed the Pages that, should they wish to prosecute the rockweed harvester,

---

[2] There were two oppositions filed to the Defendants' special motion. The Plaintiffs represented by counsel (all but one) filed an opposition, as did pro se Plaintiff Orlando Delogu. The Court has reviewed both oppositions carefully but, for the sake of clarity, refers to any arguments made by either the represented or pro se plaintiff(s) as coming from the "Plaintiffs."

6

they would be able to do so. The Pages decided not to prosecute and Officer Thompson spoke with local rockweed harvesters informally, letting them know that the Pages owned the rockweed located in the intertidal zone and that they did not authorize its harvest. Officer Thompson communicated his conversation with the harvesters to the Pages and indicated that the harvesters understood the situation and would avoid the Pages' property in the future.

In March of 2019, Edward Page again contacted Officer Thompson to inform him that the same rockweed harvester had been captured, on camera, removing rockweed from the intertidal zone adjacent to the Pages' property. Officer Thompson again contacted one of the harvesters he spoke with in September of 2019 and ordered him to stop harvesting rockweed from the Pages' property.

*2. Li & Newby*

James Li & Kim Newby live year round on an island located three miles off the Maine Coast in the Town of Friendship. The Li & Newby property includes the intertidal zone located adjacent to their property which is scattered with ledge and rockweed.

On July 13th, 2019, Li & Newby saw a mechanical seaweed harvester removing rockweed from their property. Li & Newby immediately reviewed the Law Court's recently issued *Ross* opinion and contacted the Maine Department of Marine Resources ("MDMR"), hoping to obtain some guidance regarding what may be done to prevent the continued harvest. The Director of Public Health at MDMR informed Li & Newby that, as long as their deed was clear regarding their ownership of the intertidal zone in question, they could contact Maine Marine Patrol and report the harvester for theft of their rockweed.

About three days later, on July 16th, 2019, the same seaweed harvester returned to take rockweed from the Li & Newby property. This time, Newby confronted the harvester who was

7

on a small skiff adjacent to the mechanical harvester and asked that they stop their harvesting activity. The harvester did not stop and Li contacted Maine Marine Patrol later that day. Officer Luellan of Maine Marine Patrol received Li & Newby's report and promptly reviewed their deed to determine whether they had ownership of the intertidal zone in question. After determining they did, Officer Luellan then identified the harvester as Leroy Gilbert, a Plaintiff in this action.

Gilbert continued to harvest rockweed from the Li & Newby property for two or so weeks after Newby initially requested that he stop. Each time, Li & Newby contacted Maine Marine Patrol but they were unable to respond. On August 3rd, 2019, Newby again approached Gilbert when he was harvesting rockweed in Li & Newby's intertidal zone. Newby again asked Gilbert to stop harvesting and again, Gilbert did not do so. Newby then contacted the Director of Marine Policy at MDMR as well as Officer Luellan of Maine Marine Patrol to report Gilbert's continued harvesting. On that day, Officer Luellan responded to the Li & Newby property by patrol boat and informed Gilbert that it was illegal to continue his harvest. Gilbert subsequently left the area.

*3. Robin Seeley*

Robin Seeley is a marine biologist who has been an outspoken proponent of rockweed conservation. She has submitted legislative and other testimony supporting rockweed conservation efforts in the past and has published websites and newsletters informing the public about various rockweed conservation issues. She is also the owner of coastal property located in the town of Pembroke, Maine.

**B. Discussion**

The PLNS Defendants claim that the instant lawsuit is premised on the lawful exercise of their right of petition pursuant to the Maine and United States Constitutions. Thus, they have

8

brought this special motion, invoking Maine's anti-SLAPP statute to obtain dismissal of the Plaintiffs' claims with respect to them.

Maine's anti-SLAPP statute, found at 14 M.R.S. § 556 states as follows:

> When a moving party asserts that the civil claims . . . against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss . . . The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556 (2021). This statutory framework for deciding special motions to dismiss results in a two step analysis that was adopted by the Law Court in *Morse Bros. v. Webster*, 2001 ME 70, ¶ 19, 772 A.2d 842, refined in *Nader v. Me. Democratic Party*, 2012 ME 57, ¶¶ 31-33, 41 A.3d 551, and refashioned in *Thurlow v. Nelson*, 2021 ME 58, ¶ 19, 263 A.3d 494.

The first step, a question of law, requires the trial court to "determine whether the claims against the moving party are based on the moving party's exercise of the right to petition pursuant to the federal or state constitutions." *Thurlow*, 2021 ME 58, ¶ 12, 263 A.3d 494. If the defendant/moving party establishes that the claims are premised on their petitioning activity, then the second step requires the non-moving party (usually the plaintiff) to set forth a prima facie case that the "moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." *Id.* ¶¶ 12-13.

A prima facie standard is a low one that requires proof of only enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor. *Id.* ¶ 13 (quoting *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 34, 41 A.3d 551.) It does not depend on the reliability or

9

credibility of the evidence. *Id.* Although not considered a third step in the anti-SLAPP framework, the requirement of showing actual injury is an important one. *See Weinstein v. Old Orchard Beach Family Dentistry LLC., et. al.*, 2022 ME 16, ¶ 5, --- A.3d --- ("The Plaintiff's failure to meet either portion of their prima facie burden requires that the Court grant the special motion to dismiss with no further procedure.").

With this two step framework in mind, and guided by the Law Court's recent decision in *Weinstein*, this court embarks on an analysis of the Defendants' special motion. Consistent with the Law Court's jurisprudence, the Court severs the framework into three components: (1) Petitioning Activity; (2) Prima Facie Case that Petitioning Activity was Devoid of Reasonable Basis in Fact and Arguable Basis in Law; (3) Actual Injury.

### 1. Petitioning Activity

In the first step of an anti-SLAPP analysis the burden is on the moving party, the PLNS Defendants here, to establish that the Plaintiff's lawsuit was brought because of their exercise of their right of petition. 14 M.R.S. § 556 offers an expansive definition of the phrase "a party's exercise of its right of petition:"

> As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556 (2021).

### a. The Pages and Li & Newby

Here, guided by the statute's expansive definition, there can be little doubt that the Pages and Li & Newby's reports to Maine Marine Patrol were an "exercise of their right of petition." The Court finds that these reports constitute "any written or oral statement . . . submitted to a[n] . . . executive . . . body." The question now becomes whether the current suit was premised on this activity. This Court finds that it was.

Paragraphs twenty five and twenty six of the Plaintiffs' complaint specifically mention the Pages, stating that they "wrongfully" claim title to the intertidal land that abuts their property in Harpswell, Maine and alleging that they have "called law enforcement to have seaweed harvesters . . . removed from the intertidal land [the Pages] unlawfully claim." (Compl. ¶¶ 25-26.)

Additionally, paragraphs twenty nine and thirty of the complaint state that Li & Newby "wrongfully" claim title to the intertidal zone which abuts their property in Friendship, Maine, and that they have "harass[ed] seaweed harvesters and call[ed] law enforcement" on harvesters who are "lawfully harvesting seaweed on intertidal land [Li & Newby] wrongfully claim to own." (Compl. ¶¶ 29, 30.)

With respect to the Pages and Li & Newby, it is clear that Plaintiffs' suit is based, at least in part, on their petitioning activity. Without their respective reports to Maine Marine Patrol, their presence in this case as named defendants likely would not be warranted. Accordingly, the Pages, as well as Li & Newby, have met their burden under step one of the anti-SLAPP framework.

In their opposition, the Plaintiffs claim that the Pages and Li & Newby would all be named Plaintiffs in this case regardless of their exercise of their right of petition. They contend that the decision to name them in the present lawsuit has nothing to do with their calls to marine

11

patrol but is instead premised on their exercise of dominion over the intertidal zone. The Pages and Li & Newby's calls to marine patrol, the Plaintiffs intimate, are merely an "exercise" of their dominion no different from "erecting a fence" or placing "ropes" around the intertidal sand. This argument is unavailing.

If the Plaintiffs' decision to name the Pages, Li, and Newby had nothing to do with their reports to Maine Marine Patrol, then it is curious why every single shorefront property owner who claims title to adjacent intertidal land is not named in this suit. The reason for the Pages and Li & Newby's involvement, as evidenced by the complaint itself, is their respective reports to Maine Marine Patrol.

### b. Robin Seeley

The Court also finds that Ms. Seeley's writings and advocacy in support of rockweed conservation constitutes petitioning activity that is captured by the wide net cast by statute. Her writings and widely published conservation efforts are all "statements reasonably likely to enlist public participation in an effort to effect" legislative or judicial consideration of the issue of rockweed conservation.[3]

Additionally, it is clear from the complaint that the Plaintiffs' decision to name Seeley as a Defendant in the instant suit is a direct result of her rockweed conservation advocacy. Paragraphs thirty two through thirty five of the complaint all allege, as allegations supportive of their declaratory judgment requests, that Seeley has "published . . . falsely suggest[ive]" material, unlawfully empowering shorefront property owners to deny rockweed harvesters access to the intertidal zones they own which lay adjacent to their upland properties. (Compl. ¶ 32.)

---

[3] This is best demonstrated by Seeley's involvement as a consultant in *Ross v. Acadian Seaplants, Ltd.*, 2019 ME 45, 206 A.3d 283. (*See* Seeley Aff. ¶ 6.) Additionally, Seeley has provided testimony to state and federal governmental entities in support of rockweed conservation. (*See* Seeley Aff. ¶ 5.)

As is the case with the Pages and Li & Newby, although Seeley may be an owner of coastal property adjacent to an intertidal zone, she likely would not be named in this action had she not consistently engaged in written and oral rockweed conservation advocacy. Her activity in this respect likely helped the Plaintiffs identify her as a defendant. Nothing the Plaintiffs claim to the contrary dissuades this Court that this is the case. Accordingly, Seeley has also met her burden with respect to the anti-SLAPP framework's first step.

### 2. *Prima Facie Case that Petitioning Activity was Devoid of Reasonable Basis in Law and Arguable Basis in Fact*

#### a. *Pages and Li & Newby*

In the second step of the anti-SLAPP framework, the burden shifts from the moving party (carrying the burden for establishing that the lawsuit is based on an exercise of their "right of petition") to the non-moving party — the Plaintiffs here, to establish that the "moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law . . . ." *Thurlow*, 2021 ME 58, ¶ 12, 263 A.3d 494. Here, the non-moving party carries a prima facie burden which is a low standard that requires "only *some* evidence on every element of proof necessary to obtain the desired remedy." *Id.* ¶ 13. (emphasis added).

In this case, the Plaintiffs have failed to meet their prima facie burden. While they have set forth some evidence that the deeds to the Pages and Li & Newby's property do not successfully convey title to the adjacent intertidal zone, this is not enough to meet the exceptionally high standard imposed on the non-moving party by the anti-SLAPP framework's second step. The burden on the Plaintiffs here is to set forth prima facie evidence that the Defendants' petitioning activity was devoid of "*any reasonable* factual support or *any arguable* basis in law." 14 M.R.S. § 556 (2021) (emphasis added).

13

With respect to the Pages and Li & Newby, the Defendants cannot make the required showing. The record establishes that their respective decisions to contact Maine Marine Patrol had some reasonable basis in fact and an arguable basis in law.

With respect to the Pages' decision to contact Maine Marine Patrol on two occasions, they did so because they had a reasonable factual belief that they owned the intertidal zone adjacent to their upland property. In September of 2018, the Pages observed a rockweed harvester capturing vegetation within the intertidal zone adjacent to their property. Based on this observation, and the language in their deed which conveyed "all the right, title and interest of the grantors in and to the flats and land lying between the high and low water marks on Cundys Harbor and the New Meadows River abutting and adjacent to the above described premises," they contacted Maine Marine Patrol. Later, in March of 2019, they again contacted Maine Marine Patrol again when that same harvester was captured, on camera, removing rockweed from the intertidal water. This harvester did so even after receiving a verbal warning from law enforcement. Thus, regardless of the chain of title questions raised by the Plaintiffs as to the propriety of the intertidal zone conveyance, the Pages still had a reasonable basis in fact and an arguable basis in law for their petitioning activity.

Similarly, Li & Newby also had a reasonable basis in fact and an arguable basis in law for their decision to contact Maine Marine Patrol. The record evidences that Li & Newby's decision to contact Maine Marine Patrol was informed by two things: (1) The Law Court's decision in *Ross v. Acadian Sea Plants*, 2019 ME 45, 206 A.3d 283 and (2) MDMR's guidance. In their affidavit, Li & Newby note that they first observed a rockweed harvester in their intertidal zone shortly after the *Ross* opinion was issued by the Law Court. They then obtained a copy of the *Ross* opinion to determine their options. One day later, they received direction from

14

MDMR's Director of Public Health, telling them that they can contact Maine Marine Patrol if their deed is clear regarding their ownership of the intertidal zone. The deed to Li & Newby's property conveys an interest in the "shore, rocks and flats" adjacent to their property. Thus, at the time Li & Newby contacted Maine Marine Patrol regarding the harvesting of Rockweed from their property, they had reviewed a recent law court opinion holding that rockweed is the private property of upland owners who have clearly been conveyed the intertidal zone via their deed's language and received guidance from MDMR to contact Maine Marine Patrol. This information and guidance form a reasonable basis in fact and an arguable basis in law for their decision to contact law enforcement.

### b. Robin Seeley

With regard to Seeley, the Plaintiffs contend that the petitioning activity which serves as a partial basis for the instant suit is devoid of a reasonable basis in fact and an arguable basis in law because the deed to Seeley and her husband's property does not contain language which conveys the adjacent intertidal land to them. While this argument may have merit, such an argument is not the burden the Plaintiffs' carry.

Section 556's framework requires the Plaintiffs to make a prima facie case that Seeley's writings, which helped identify her as a Defendant in this lawsuit, were devoid of a reasonable basis in fact and an arguable basis in law. In their opposition, the Plaintiffs make no such attempt to address Seeley's advocacy. Accordingly, the Plaintiffs have also failed to establish their prima facie burden with respect to Seeley.

### c. Conclusion

Because the Plaintiffs fail to meet their prima facie burden of showing that the PLNS Defendants' petitioning activity was devoid of *any* reasonable basis in fact or arguable basis in

15

law, the Plaintiffs' complaint cannot survive the PLNS Defendants' special motion. This would normally conclude the Court's analysis. However, given the law court's recent decision in *Weinstein* which further flushed out the actual injury requirement of the anti-SLAPP framework's second step, the Court discusses why the PLNS Defendants would also prevail under the actual injury portion of the framework's second step.

### 3. Actual Injury

The second half of the anti-SLAPP framework's second step also requires the non-moving party to show that the "moving party's acts caused actual injury to the responding party." *Thurlow*, 2021 ME 58, ¶ 12, 263 A.3d 494. "Actual injury means a reasonably certain monetary valuation of the injury suffered by the Plaintiff." *Weinstein*, 2022 ME 16, ¶ 7, --- A.3d ---. "Actual injury could include . . . quantifiable losses of money or other resources or identifiable special damages." *Id.*

"Complaints challenged by an anti-SLAPP special motion to dismiss differ from other civil complaints because a complaint's notice pleading may be insufficient in the face of a special motion to dismiss." *Id.* ¶ 9. While, by nature, a notice pleading is traditionally forgiving, the "special motion to dismiss procedure in anti-SLAPP matters is . . . a more precise mechanism" for which notice pleading is insufficient. *Id.* ¶ 10 (quoting *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228). Such precision is mandated by the anti-SLAPP statute itself, which requires the opponent of a special motion to dismiss to show "that the moving party's acts caused actual injury to [them]." *Id.*

Although a Plaintiff may not always be able to foresee a challenge by way of special motion, the plaintiff may later amend his or her complaint to allege actual injury with greater specificity and may bolster any allegations of actual injury through his or her affidavit. *Id.* The existence of actual injury may be considered only to the extent that the asserted injury was both

16

alleged in the complaint and established on a prima facie basis in opposition to the special motion to dismiss. *Id.* ¶ 8.

In their complaint asking for multiple declaratory judgments, the Plaintiffs allege that such judgments are needed, in part, because of the economic harm the Law Court's erroneous holdings have caused to Maine's marine economy. Specifically, in their affidavit, the Plaintiffs allege that the PLNS Defendants prohibition of rockweed harvest within the intertidal zone costs them by increasing their fuel costs, prolonging the time spent harvesting, driving up raw material costs, affecting their marketplace competitiveness, and creating investor skepticism. Thus, the alleged harm is mostly economic in nature.

These speculative and imprecise allegations of economic harm are not enough to establish actual injury for anti-SLAPP purposes. While such notice pleading is appropriate in the context of an ordinary complaint, it does not pass muster under an anti-SLAPP challenge which, as *Weinstein* makes clear, requires more precisional pleading, and a "reasonably certain monetary valuation" for the Plaintiffs' damages. *Weinstein*, 2022 ME 16, ¶ 7, --- A.3d ---. Such precision is not found in the Plaintiffs' complaint, nor in their opposition.[4] The Plaintiffs also have not sought amendment of their complaint.

Accordingly, the PLNS Defendants' Special Motion to Dismiss is Granted. Any claims with respect to the PLNS Defendants are therefore dismissed. Because the PLNS Defendants' special motion disposes of any claims against them, their motion filed pursuant to M.R. Civ. P. 12(b)(6) is moot.

**II. 12(b)(6) Motions for Dismissal**

---

[4] In their opposition, the Plaintiffs state that they intend to introduce "business valuation and commodity pricing, but for the purposes of this motion, such evidence is premature." While formal valuations and commodity pricing reports may have been premature, some quantifiable economic harm was required.

With the claims against the PLNS Defendants dismissed pursuant to their anti-SLAPP motion, what remains pending are two motions for dismissal brought pursuant to M.R. Civ. P. 12(b)(6). The motions largely raise the same legal grounds for dismissal but are premised on different factual records. As such, the factual background section of the order is separated per movant, but the legal analysis of the Plaintiffs' claims is conducted without consideration as to the separate nature of the motions.

## A. Standard of Review

"A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the claim." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166 (quoting *New Orleans Tanker Corp, v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673). When the court reviews a motion to dismiss, "the claim is examined 'in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426. Allegations in the complaint are deemed true for the purposes of deciding a motion to dismiss. *Id.* "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)) (internal quotations omitted).

## B. Factual Background

When reviewing a motion to dismiss brought pursuant to M.R. Civ. P. 12(b)(6), the Court views the factual allegations contained in the complaint in a light most favorable to the non-moving party. *See Lalonde*, 2017 ME 22, ¶ 11, 155 A.3d 426. Accordingly, the Court finds the following facts for the purposes of deciding the instant, pending motions.

*1.* OA & JM Defendants

18

The OA & JM Defendants are a group comprised of OA 2012, a Maine trust with trustee, John Howe residing in Kennebunk, Maine, and Judy's Moody, LLC, a Maine Corporation located in Wells, Maine. Both OA 2012 and Judy's Moody LLC are the record owners of beachfront property in Wells. They both claim title to the intertidal zones which abut their upland property and restrict public access to them. OA 2012 posts signs along their beachfront property which say "Private Beach, No Loitering."

Similarly, personnel associated with Judy's Moody, often approach members of the public standing on intertidal land adjacent to their upland property and request that they leave or vacate the premises because they do not have Judy's Moody's permission to be there. Judy's Moody's beachfront home is located directly across the street from Plaintiffs Peter and Kathy Masucci. Peter and Kathy Masucci claim that their access to the intertidal zone is severely restricted by Judy's Moody's signs and actions.

Both OA 2012 and Judy's Moody, the Plaintiffs here claim, are engaging in conduct that they are not legally entitled to engage in because the intertidal zone is not private property. Instead, they claim that the intertidal zone is held in trust for the public's use, as is the rest of the land seaward of the mean low water mark.

### 2. Ocean 503

Ocean 503, LLC, is a Maine Corporation with a location in Wells, Maine and is also a record owner of beachfront property within the town. As is the case with OA 2012 and Judy's Moody, Ocean 503 posts signs on its property that say "Moody Beach is a Private Beach to the low water mark. No Loitering." This sign, the Plaintiffs claim, is an improper exercise of dominion and control over the intertidal zone abutting their upland property since that land is, in fact, held in trust for the public's use.

**C. Discussion**

19

The OA & JM Defendants' Motion to Dismiss and Ocean 503's Motion to Dismiss, each raise similar legal challenges to the Plaintiff's five count complaint. Generally, the challenges raised can be broken into two categories: (2) claims regarding ownership of the intertidal zone; and (3) claims regarding the scope of the public's right to use the intertidal zone.[5]

### 1. Claims of Ownership

In Counts II, III and V of their Complaint, the Plaintiffs seek to establish the State of Maine's ownership, in fee, of all intertidal lands by asserting that any alienation or transfer of intertidal land which occurred after Maine was granted statehood, occurred in violation of various constitutional provisions.[6] In Count II, the Plaintiffs claim that such alienation occurred in violation of the so called 'Equal Footing Doctrine.'[7] *See* U.S. Const. art. IV, §§ 1-3. In Count III, the Plaintiffs claim that such alienation of intertidal land was a product of "judicial legislation" in violation of separation of powers principles enshrined in Maine's Constitution. *See* Me. Const. art. 3, §§ 1-2. In Count IV, the Plaintiffs challenge the Defendants' chains of title to their upland parcels.

#### a. Equal Footing Doctrine

For lack of a better phrase, the Defendants response to the Plaintiffs' second count is simple: asked and answered. This Court agrees. Even viewing the facts plead in a light most favorable to the Plaintiffs, Count II fails to state a claim as a matter of law.

---

[5] As an initial matter, the Court notes that a declaratory judgment claim cannot serve as an independent cause of action. A declaratory judgment is, instead, a form of equitable relief that must accompany an independent, underlying claim which warrants the requested relief. Here, the court treats the Plaintiffs' first four counts as bringing claims arising under either the federal or Maine Constitutions. Thus, they survive this query. Count IV, however, makes a claim that can only be characterized as an action to quiet the title in the State of Maine, which under any conceivable accrual date, would have run past its statutory limitation. As such, Count IV is dismissed for its failure to state a claim.

[6] Count I does not raise any legally cognizable claim and, instead, notice pleads the form of equitable relief requested by the Plaintiffs. Thus, the Court does not address it here.

[7] The "equal footing" doctrine is based on the principle that new States enter the Union on an equal footing with the original thirteen States. *See Bell v. Wells*, 557 A.2d 168, 172 n.13 (Me. 1989.)

20

The crux of the equal footing argument made by the Plaintiffs is that, because Maine entered the union on an "equal footing" with the original thirteen colonies, the principles which governed intertidal zone ownership for those thirteen states, governed Maine's as well. And, because title to intertidal land was held by those original states, title to Maine's intertidal lands was also vested in the State upon its inception. *See* Orlando Delogu, *Intellectual Indifference-- Intellectual Dishonesty: The Colonial Ordinance, the Equal Footing Doctrine, and the Maine Law Court*, 42 Me. L. Rev. 43, 56, (1990) ("Maine, upon entering the Union, did so on an "equal footing" with the original states, and accordingly acquired title in 1820 to all tidelands within its jurisdictional borders.").

However, this argument for Maine's ownership of intertidal land was addressed and dispelled by the Law Court in *Bell v. Town of Wells (Bell II)*, 557 A.2d 168, 172 (Me. 1989), the second of two cases with the same name which addressed the scope of the public's right to use intertidal land, *see also Bell v. Town of Wells (Bell I)*, 510 A.2d 509, 511-17 (Me. 1986). In *Bell II*, the Law Court stated that the 'equal footing doctrine' did not vest title to intertidal land in the State because Maine's Constitution expressly honored any laws in full force and effect in the Massachusetts colony at the time Maine's territory was extracted into sovereignty. *Bell II*, 557 A.2d 168, 172 (Me. 1989). One of these laws granted title to intertidal lands to the adjacent upland owners, in fee.[8] *Id.*

---

[8] In their response to the Defendants motions, the Plaintiffs also make a supremacy argument. They state that because the equal footing doctrine is a product of federal court jurisprudence and statute, it preempts this State's constitution and the Law Court's interpretation of such provisions. This argument also fails. "Federal preemption of state law takes three forms: express preemption, field preemption, and conflict preemption." *Puritan Med. Prods. Co. LLC v. Copan Italia S.P.A.*, 2018 ME 90, ¶ 13, 188 A.3d 853. None of these preemptive categories are implicated here. There is no federal law regarding the equal footing doctrine's application to Maine's intertidal lands which Congress has "expressly defined" as preempting Maine law on the matter. *Id.* There is no state law which interferes with regulation of a field congress intended to fully occupy, and there is no evidence that state law regarding the equal footing doctrine stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.*

21

Since the *Bell II* decision, the Law Court has not revisited the equal footing doctrine's application to the issue of intertidal ownership and has not reversed its holding that the equal footing doctrine does not operate to vest title to intertidal lands in the State of Maine.

Accordingly, the Plaintiffs cannot request a declaration invalidating private, upland owner's title to intertidal land premised upon application of the 'equal footing doctrine.' Count II is dismissed.

*b. Judicial Legislation*

In Count III, the Plaintiffs seek a declaration from this Court deriding the Law Court's prior intertidal jurisprudence as "judicial legislation," and stating that the Law Court's decisions, beginning with *Bell I*, impermissibly usurp the legislature's authority to regulate and manage the public trust. Again, even viewed in a light most favorable to the Plaintiffs, this argument is unavailing.

In *Bell I*, the Law Court discussed the longstanding practice of Maine and Massachusetts courts to recognize the colonial ordinance, the piece of colonial era Massachusetts legislation which vests title to intertidal lands in the adjoining upland property owners, as part of the state's common law. *Bell I*, 510 A.2d at 514. The colonial ordinance was so rooted in Maine's common law, the *Bell I* court noted, that "doing away with any part of it, or failing to give it its full force and effect statewide" would be an impermissible act of judicial legislation. *Id.* (quoting *Barrows v. McDermott*, 73 Me. 441, 448-49 (1882)). Any such alteration to the colonial ordinance, the Court continued, "must be made by the "proper law making power." *Id.*

When such a law making power did attempt to alter the legal landscape painted by the colonial ordinance, via legislation, the Law Court rejected the attempt. *Bell II*, 557 A.2d 168, 176-79 (Me. 1989). In *Bell II*, the Law Court struck down a statute adding intertidal lands as an

22

asset to the public trust, declaring such a redistribution of intertidal land ownership an unconstitutional taking in violation of the Fifth Amendment. *Id.*

Identifying what the common law is, as the Law Court did in *Bell I*, and invalidating a legislative attempt to alter the common law that runs afoul of the Constitution, as the Law Court did in *Bell II*, is the very essence of the judicial function. Similarly, clarifying the scope of its earlier holdings as the Court did in *McGarvey v. Whittredge*, 2011 ME 97, 28 A.3d 620 and *Ross*, serves the judiciary's interpretive function. Nothing about the Law Court's line of cases addressing ownership of intertidal lands violates the separation of powers doctrine. The Law Court's jurisprudence on the topic has, in sum: identified the colonial ordinance as the common law of this state, interpreted that common law to define what rights are held by whom, and shielded the beneficiaries of this common law from legislation which offends constitutional principles.

Accordingly, Count II of the Plaintiffs' complaint also fails to state a claim upon which relief can be granted. Under no set of facts that the Plaintiffs may prove, will they be able to invalidate the prior effects of the Law Court's intertidal jurisprudence.

*c. Title Challenges*

In Count V of their complaint, the Plaintiffs seek a declaration quieting title to intertidal lands adjacent to the upland property owned by the Defendants, in the State of Maine.[9]

A declaratory judgment action cannot be used to create a cause of action that does not otherwise exist. *See Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996); *Hodgdon v. Campbell*, 411 A.2d 667, 668 (1980), it may only be brought to resolve a justiciable controversy. *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 20, 738 A.2d 1239. Thus, a

---

[9] While not specifically characterized as "an action to quiet title," this Court cannot see the Plaintiffs' request as anything other.

23

declaratory judgment action cannot be used to revive a cause of action that is otherwise barred by the passage of time. *Sold Inc. v. Town of Gorham*, 2005 ME 24, ¶ 10, 868 A.2d 172. An action to quiet title is a civil action to which the six-year statute of limitations applies. *See Efstathiou v. Aspinquid Inc.*, 2008 ME 145, ¶ 14, 956 A.2d 110; 14 M.R.S. § 752 (2021).

Based on the facts plead in the complaint, even viewed in the most favorable light possible, this action to quiet title to the intertidal lands in the State of Maine has been brought 120 years too late. The complaint mentions that the conveyances it seeks to invalidate were made in the seventeenth century. Even using the last year of that century (1899) as the date of accrual, Count V is time barred by the applicable statute of limitations.[10]

### 2. Scope of the Public's Usage Rights

In Count IV of their complaint, the Plaintiffs seek a declaration from this court which would expand the public's right to use the intertidal zone. Specifically, the Plaintiffs ask for declaration that the public's rights of use expand beyond fishing, fowling and navigation, the rights reserved for members of the public in *Bell II*.

Although the law of intertidal land ownership has remained unchanged in principle since *Bell II*, the scope of the public's usage rights has been pliable. The Law Court has maintained a flexible approach to determining what public uses are allowed in the intertidal area and have endorsed "uses that are somewhat related to, but not coextensive with, "fishing," "fowling," and "navigation." *McGarvey*, 2011 ME 97 ¶ 40, 28 A.3d 620. Thus, what constitutes a permissible use of the intertidal zone by the public has taken many different forms. *See id.* (discussing the ways in which uses tangentially related or unrelated to fishing, fowling and navigation have been

---

[10] This would be true even if the Plaintiff had successfully plead the elements of an action to quiet title, *see* 14 M.R.S. § 6651 (2021.

24

allowed). Employing a "sympathetically generous approach" to defining the public's rights of use in the intertidal area, the Law Court has endeavored to balance an "expansive approach" allowing certain activities which are generous to the public "against the upland owner's rights." *Id.*

In this case, certain Plaintiffs claim that their access to the ocean's intertidal zone has been restricted by ether signage or verbal instruction to leave or refrain from entering the privately held intertidal zone. Plaintiffs Peter Masucci, Kathy Masucci, William Connerny, William Griffiths, Sheila Jones, Orlando Delogu, Judith Delogu, and Brian Beal all allege that their access to the intertidal zone is restricted either by signage or verbal warning and direction.

While it is not clear from the complaint itself what activities the Plaintiffs prefer to engage in, in the intertidal area, it is conceivable that the activity of the Massuccis, Connerny, Griffiths, Jones, and the Delogus includes walking, running, or some other form of movement. In Bean's case, he is an academic researcher who seeks to access the intertidal zone to further his marine research. Whether any movement or research related activity is permissible within the intertidal zone has not been specifically addressed by the Law Court. And, given the expansive and broad approach that the Law Court has taken with regard to defining these usage rights, it is conceivable that movement related, or research based activity may be an acceptable use.[11]

Accordingly, there is a set of facts which Plaintiffs Peter Masucci, Kathy Masucci, and William Connerny, William Griffiths, Sheila Jones, Orlando Delogu, Judith Delogu, and Brian Beal may prove in support of their claims. Accordingly, Count IV survives the 12(b)(6) motions.

---

[11] Although Count IV survives, the other plaintiffs with standing — those who seek declaratory judgments regarding their right to use the intertidal zone for the commercial purpose of harvesting marine plants — have little chance of success as to Count IV. The Law Court was clear in *Ross* that even under the flexible balancing approach the Court employs, removing marine plants from private intertidal land is not a permissible activity. *Ross,* 2019 ME 45 ¶¶ 31-32, 206 A.3d 283.

25

## CONCLUSION

This order has, in effect, limited this lawsuit to claims against Defendants Judy's Moody LLC, OA 2012 Trust, Ocean 503, LLC, Jeffrey Parent and Margaret Parent. Pursuant to the PLNS Defendants anti-SLAPP Motion, all counts against Edward Page, Christine Page, James Li, Kim Newby, and Robin Seeley are dismissed.

Pursuant to Ocean 503, LLC, and the JM & OA Defendants' Rule 12(b)(6) motions, Counts II, III, and V against them have been dismissed. All that remains with respect to these Defendants is Count IV.

Plaintiffs Charles Radis, Sandra Radis and Bonnie Tobey do not have standing to bring this suit. Any claims prosecuted by them are dismissed.

**Entry is:**

Defendants Edward Page, Christine Page, James Li, Kim Newby and Robin Seeley's Special Motion to Dismiss is Granted.

Defendants Edward Page, Christine Page, James Li, Kim Newby and Robin Seeley's Motion to Dismiss filed pursuant to M.R. Civ. P. 12(b)(6) is Moot.

Defendants Judy's Moody LLC and OA 2012's Motion to Dismiss filed pursuant to M.R. Civ. P. 12(b)(6) is Granted in Part.

26

Defendant Ocean 503 LLC's Motion to Dismiss filed pursuant to M.R. Civ. P. 12(b)(6) is

Granted in Part.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ.

P. 79(a).

Dated: 4/15/22

_____
John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 4/15/2022

27